MICHAEL J. REEM v. ST. PAUL CITY RAILWAY COMPANY.

October 26, 1899.

Nos. 11,737—(36).

| 77 | 503 |
| s82 | 98 |
| 77 | 503 |
| 83 | 214 |
| 77 | 503 |
| 86 | 230 |

Negligence of Carrier.

The exposure of a passenger to danger which the exercise of reasonable foresight would have anticipated, and due care have avoided, is negligence on the part of a carrier.

Street Railway—Negligence.

When a street-railway company undertakes to carry large numbers of people, vastly in excess of the seating and standing capacity of its cars, and permits passengers to ride on the platforms, stops its cars when in such crowded condition that other persons may get upon them, and, because of the crowd, a passenger who has boarded a car before it was crowded is pushed off a platform and injured, the company is guilty of negligence.

Evidence—Res Gestae.

*Held*, in an action brought to recover on account of injuries alleged to have been received under such circumstances, that the court erred when permitting a witness to testify as to what the conductor of the car said to her immediately after the accident. In this instance the conductor's statement was no part of the res gestæ, for, although it may have been contemporaneous in point of time, it did not illustrate, or explain, or characterize the transaction in any degree.

Evidence—Admission of Claim Agent.

*Held*, further, that the court was in error when it allowed a witness to testify as to an admission made concerning the case by defendant's claim agent.

Action in the district court for Ramsey county by plaintiff, an infant, by his guardian ad litem, to recover $30,000 damages for personal injuries. The case was tried before O. B. Lewis, J., and a jury, which rendered a verdict in favor of plaintiff for $10,500. On motion of defendant for judgment notwithstanding the verdict or for a new trial, the court made an order denying judgment notwithstanding the verdict, but granting a new trial unless plaintiff consent to a reduction of the verdict to $7,000. Plaintiff consented

to the reduction, and from the order defendant appealed. Reversed.

*Munn & Thygeson,* for appellant.

*J. W. Pinch* and *John D. O'Brien,* for respondent.

COLLINS, J.

The evidence in this case tended to show that the boy, aged about 15 years, who was injured, hereinafter called "plaintiff," was a passenger on a "trailer" upon one of defendant's electric lines in the city of St. Paul. The car was crowded when plaintiff got on. He could not get a seat, nor was there standing room on the rear platform or the aisle. He jumped off a rear step at the first stop, ran ahead, and stood on the front platform, with one hand on the chain which, stretched from the front dashboard to a corner stanchion, was designed either to keep passengers from getting on or off at that place, or for protecting those already on, or possibly for both purposes. At the time he took this position, the front platform was not crowded; but afterwards the car was stopped for passengers, those in the rear were directed by the conductor to move up in front, and this they did until the front platform was much crowded. The boy was pushed against the chain. It gave way, and he was thrown upon the ground, receiving the injuries complained of.

On this evidence the question of defendant's negligence, and also that of plaintiff's contributory negligence, were for the jury. The defendant's negligence consisted, if there was any, in stopping the car for passengers, thereby inviting them to get on, until the entire car, including the front platform, became so congested that plaintiff was crowded off. The exposure of a passenger to a danger which the exercise of reasonable foresight would have anticipated, and due care have avoided, is negligence on the part of a carrier. There was evidence which warranted the jury in finding that defendant undertook to carry more passengers than could sit and stand within the car and on the platforms, both of which were filled to their utmost capacity, and the direct result was that plaintiff was pushed off the car and injured.

It must be held that when a street-railway company undertakes

to carry large numbers of people, vastly in excess of the seating and standing capacity of its car, and permits passengers to ride on the platforms, stops its car when in such crowded condition that other persons may get upon it, and, because of the crowd, a passenger, who has boarded the car before it became crowded, is pushed off a platform to his injury, the company is guilty of negligence. See Lehr v. Steinway, 118 N. Y. 556, 23 N. E. 889; Topeka v. Higgs, 38 Kan. 375, 16 Pac. 667. And if plaintiff was guilty of contributory negligence it was because he failed to exercise ordinary care to avoid danger, while one of the crowd on this front platform.

It was on these theories that the court, in its charge, submitted the cause to the jury. The jury found specially that the accident was caused by the overcrowding of the car, and also found a general verdict against defendant. But there must be a new trial for two reasons:

1. Plaintiff produced as a witness a lady by the name of Jaehn, who was upon the car when he fell. Miss Jaehn testified that she saw him after he had fallen, and told the conductor that some one had been run over. She was then asked to state what she said to the conductor, and what he said to her. Objection was made to this class of testimony, and particularly as to what the conductor said; but the court overruled the objection, and allowed the witness to narrate what was said, as follows:

"Well, right when he fell, and I noticed it, why the conductor stood between me and a lady friend of mine. Of course, my back was turned to him, but I quickly turned around; and he took her fare; and I turned around and yelled at him. Of course, I don't remember the exact words, but I yelled out something in astonishment, and told him to stop. And he never said a word, but run over and took some names down, or I thought he took some names down. And some one yelled to him to stop the car. He came back, and I took hold of his coat, and yelled at him to stop the car. And he said: 'Never mind, lady; never mind. Just give me your fare.' So, of course, I gave him my fare, and shut up."

The neglect of the conductor to stop the car, that the plaintiff's condition might be learned, and his apparent heartlessness when informed that some one had been run over, as shown by his answer, were dwelt upon at length by plaintiff's counsel when addressing

the jury, and, we have no doubt, had influence in the determination of the case. The testimony as to what the conductor said was clearly incompetent, and unquestionably was very prejudicial. Its tendency was to influence the minds of the jurors, and to arouse feeling against defendant. There was no pretense that the conductor saw the boy when he fell, or that he even knew that a passenger had been injured, when calling upon Miss Jaehn to pay her fare. It was no part of the res gestæ, for the declaration of a party, to be admissible as a part of the res gestæ, must be contemporaneous with, or at least so connected with, the main fact in issue, as to constitute a part of the transaction, and thus derive credit from the main fact or act itself, to explain or characterize which it is offered in evidence. Conlan v. Grace, 36 Minn. 276, 280, 30 N. W. 880. The rule is frequently expressed in the following language:

"The declaration should be contemporaneous with the transaction in issue. There is no doubt but that the declaration must be a part of the transaction, and that it must illustrate or explain it. The declarations must be calculated to unfold the nature and quality of the facts which they are intended to explain. They must so harmonize with those facts as to form one transaction."

Now, the remark or declaration of the conductor was no part of the transaction, nor did it illustrate or explain or characterize it in the slightest degree. The issues were, did defendant negligently permit or cause the car to be overcrowded? and, if so, did this overcrowding cause plaintiff's injuries? The remark of the conductor had no bearing on these issues, was no part of the transaction, derived no credit from the main fact or act, and did not explain or elucidate or characterize it in any way.

"There must be a main or principal fact or transaction, and only such declarations are admissible as grow out of the principal transaction, illustrate its character; are contemporary with it, and derive some degree of credit from it." Lund v. Inhabitants, 9 Cush. 36, 42.

But counsel for plaintiff insist that the conductor's declaration was admissible as part of the res gestæ, because it indicated "confusion of mind and loss of control of himself or over his car," and

therefore to explain or characterize the condition of things which they claim existed. This is a matter of opinion, perhaps, but, if the conductor had no knowledge of an accident when he made the remark, it explains nothing, and characterizes no act. If he did know that some one had been injured by the car, the language used shows rather clearly that he was not at all confused, or even disturbed. It demonstrates that he was cool and deliberate, as well as heedless and heartless. It was error to permit the witness to state what the conductor said to Miss Jaehn.

2. The court also erred when permitting the witness Pinch to testify as to what he had been told by Mr. Esterly. There was no pretense that this was any part of the res gestæ.

Esterly was the defendant's claim agent, engaged in looking up witnesses having knowledge of facts bearing upon any claims which might be made against his principal,—that made by plaintiff, among others. It had been asserted by defendant's counsel at the trial that the company had never been able to find the conductor of the car from which plaintiff fell, and for that reason had no knowledge of the facts in the case. Thereupon Mr. Pinch was called as a witness, and, over counsel's objection, was permitted to testify, for the purpose of showing that defendant company "had evidence within its possession, and purposely withheld it," that on one occasion Esterly stated to him that defendant had found out who the conductor was, and had learned all about the accident; and, further, that, on being asked the name of the conductor, Esterly made no answer. Mr. Esterly had not been questioned at the trial in regard to this subject. There was no evidence that he had any right or authority to make any admissions. There was no evidence or foundation laid to show that he was then and there transacting any business which would make this declaration or admission part of the res gestæ. There was no testimony to which this admission served the purpose of impeaching testimony, but it was offered as original, substantive evidence of an admission by which defendant should be bound.

The admission of this testimony was an absolute disregard of the well-known rule that "declarations or admissions made by an agent or employee are not admissible against his principal, unless they

relate to a transaction in which the agent or employee has real or apparent authority to act for the principal, and unless they are made during that very transaction, and thus constitute a part of the res gestæ." Mr. Esterly had no real or apparent authority to make an admission of this character which would bind his principal. He was simply a claim agent, engaged in securing evidence as to facts involved in claim cases as they arose and were placed in his hands. He had no real or apparent authority to state what his principal had learned in respect to the conductor or the accident.

In view of the fact that a new trial must be had, other assignments of error need no consideration.

Order reversed.

The following opinion was filed November 10, 1899:

PER CURIAM.

In a petition for reargument, plaintiff's counsel insist that the statement in the opinion that there was no pretense that the conductor knew when talking with the witness Jaehn that a passenger had fallen from the car is opposed to the testimony; that it appears that he did know of the accident when the conversation occurred, and for this reason his remark was admissible, as part of the res gestæ. We do not agree with counsel in their assertion as to the proof on this point, although it is possible to infer that the conversation with Miss Jaehn was after other passengers had called the conductor's attention to the fact that the boy had been injured. But it is wholly immaterial whether the conductor knew or did not know of the injury when he made the remark, and it would seem from a reading of the opinion that this was made quite clear. The admission of this evidence was held error because of the nature of the conductor's statement. It had no bearing on the issues, was not a part of the transaction, derived no credit from the main fact or act, and did not explain or characterize it in any way.

Petition denied.