# Alabama Great Southern R. R. Co. v. Gilbert.

## *Injury to Passenger.*

(Decided November 19, 1912.   60 South. 542.)

1. *Carriers; Passengers; Contributory Negligence; Riding on Platforms.*—It is negligence for a passenger to stand upon the platform of a rapidly moving passenger train, except in cases of necessity; such action cannot be justified by mere considerations of comfort or choice.

2. *Same; Duty to Passengers; Train Accommodations.*—It is the duty of a carrier to provide its passengers with seats and with a reasonably safe place to ride.

3. *Same; Burden of Proof.*—Where the action was for injury to passenger by being thrown from the platform of a rapidly moving

[Alabama Great Southern R. R. Co. v. Gilbert.]

train; the burden was on the passenger to show that his presence on the platform was due to an overcrowded condition of the train.

4. *Same; Overcrowded Train.*—Where a railroad company hauling passengers overcrowds its train, it has the duty to exercise a care proportioned to the increased risk caused by such overcrowding.

5. *Same; Jury Question.*—Where the evidence was in conflict as to whether the train was overcrowded and as to whether the passenger rode on the platform from necessity or choice, it was a question for the jury whether the defendant was negligent in running the train at thirty or thirty-five miles per hour, although such a speed was the proper speed for ordinary passenger trains.

6. *Same; Wanton Negligence.*—It is not wanton negligence for a conductor to run an overcrowded passenger train at the usual, proper and customary speed of such train when not overcrowded, and hence exemplary damages are not recoverable for injury to a passenger from being thrown from the platform of an overcrowded train run at the ordinary rate of speed.

7. *Same; Complaint; Construction.*—Where the action was by a passenger for injury from being thrown from the platform of a fast moving train, the words "operated the train," in a count stating that the injuries were caused by the negligent manner in which defendant operated the train, meant control of the movement and speed of the train, in view of its crowded condition, and had no reference to defendant's failure to perform its duty to furnish the passenger with a reasonably safe place in which to ride.

8. *Same; Sufficiency.*—A general allegation of the complaint that the passenger's injuries were proximately caused by the negligent manner in which defendant operated the train upon which he was riding, was a sufficient allegation of negligence.

9. *Pleading; Instruction.*—Common words in a pleading are construed in their popular sense, common law words according to their common law significance, and technical words according to their technical sense, since, as a general rule, words are to be taken in their ordinary and popular sense unless it plainly appears that they were used in a different sense.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by Willie Gilbert pro ami, against A. G. S. R. R. Co., for damages for injuries received while a passenger. Judgment for plaintiff and defendant appeals. Reversed and remanded.

A. G. & E. D. SMITH, for appellant. Demurrers should have been sustained to the 4th count of the complaint.—*B. R. L. & P. Co. v. Brown,* 150 Ala. 327; *Anniston E. & G. Co. v. Rosen,* 48 South. 798. On these

same authorities demurrers should have been sustained to the 5th count, and should have been overruled to defendant's pleas 2 and 3 in so far as they apply to counts 4 and 5. The court erred in denying testimony that it was customary for negroes to ride on the platform on these excursion trains.—*R. R. Co. v. Hall*, 87 Ala. 708; *Humes v. O'Brien*, 74 Ala. 64; *Schlaff v. L. & N.*, 100 Ala. 377. Counsel discuss the other assignments of error relative to evidence, but without further citation of authority. The plaintiff was guilty of contributory negligence, and the defendant was entitled to the general affirmative charge.—*Clanton v. So. Ry.*, 165 Ala. 485; *C. of Ga. v. Brown*, 165 Ala. 493; *A. G. S. v. Hawks*, 72 Ala. 112; 139 Mo. App. 198; 120 Ind. 549; 10 Okla. 325; 81 S. C. 100. Defendant was entitled to the affirmative charge as to count 3.—*Smith v. Causey*, 28 Ala. 655; *Dean v. R. R. Co.*, 98 Ala. 586; *R. R. Co. v. Mansell*, 138 Ala. 548; *R. R. Co. v. Maddox*, 100 Ala. 618; *A. G. S. v. Hall*, 105 Ala. 599. Also to the affirmative charge on count 4.—*Carlisle v. A. G. S.*, 52 South. 341; *Neyman v. A. G. S.*, 55 South. 509; *L. & N. v. Sharpe*, 55 South. 139, and cases there cited, also as to the 5th count.—Authorities supra. Counsel discuss other charges, but without citation of authority.

FRANK S. WHITE & SONS, for appellee. The 3rd count of the complaint was not subject to demurrer, and sufficiently charged negligence.—*B. R. L. & P. Co. v. Harris*, 165 Ala. 483; *B. R. L. & P. Co. v. Selhorst*, 165 Ala. 477; *B. R. L. & P. Co. v. Oden*, 164 Ala. 2; *B. R. L. & P. Co. v. Jordan*, 54 South. 280; *Armstrong v. Montgomery St. Ry.*, 123 Ala. 233; *C. of Ga. v. Carlton*, 163 Ala. 64; *K. C. M. & B. v. Matthews*, 142 Ala. 309. The 4th count was good and not subject to demurrer.— *B. R. L. & P. Co. v. Lee*, 153 Ala. 70; *Same v. Wise*, 149

Ala. 492; *M. & O. v. George,* 94 Ala. 199; *Lindsey's Case,* 140 Ala. 312; *Armstrong's Case, supra; Selhorst Case, supra; So. Ry. v. Hyde,* 164 Ala. 162. On the same authorities the 5th count was good. Pleas 2 and 3 were not good pleas as to counts 4 and 5.—*Selhorst Case, supra; Lee's Case, supra; Creola L. Co. v. Mills,* 149 Ala. 482; *Osborn v. Ala. S. & W. Co.,* 135 Ala. 571; *B. R. L. & P. Co. v. Dickinson,* 154 Ala. 523. Counsel discuss the assignments of error relative to evidence and comment on the cases cited by appellant, but cite no authority. The question of the negligence of defendant was one for the jury.—*C. of Ga. v. Brown,* 165 Ala. 493. The question of wantonness was also for the jury. —*B. R. L. & P. Co. v. Williams,* 158 Ala. 382; *Montgomery St. Ry. Co. v. Lewis,* 148 Ala., 142; *M. J. & K. C. v. Smith,* 153 Ala. 127; *B. R. L. & P. Co. v. Landrum,* 153 Ala. 192; *So. Ry. v. Burgess,* 143 Ala. 364. It follows from these authorities that the court was not in error in refusing the charges requested by the defendant.

PER CURIAM.—This suit was brought by appellee, a minor, by his next friend, against the appellant for damages for personal injuries received by him while he was a passenger on one of appellant's trains. In May, 1910, the appellant ran an excursion train from Birmingham, Ala., to Hull, Ala. The appellee was a passenger on said train, and on the return trip to Birmingham from Hull, and while standing on the steps of a platform or on the platform of one of the cars, fell from the train and received painful and permanent injuries. At the time appellee fell, the train was at a point between Tuscaloosa and Birmingham, and was running at a rate of speed of 30 or 35 miles an hour. The appellee testified as a witness in the case, and we quote that

part of his testimony which gives his explanation of why he was on the platform and how he fell from the train: "That he got on at Hull and stood on the platform; that the platform was crowded, and there was no room in the car; that so far as he could see the car was crowded and people were standing up in it; that he tried to get in the car, but couldn't; that he got on the train on the left-hand side going to Birmingham; that he was thrown off the train between Woodstock and Vance; that it seemed like they were running around a curve at the time he was thrown off; that at the time he was thrown off he was holding to the back of a man standing in front of him on the platform; that there was nothing else for him to hold onto, and he was standing too far in the middle of the platform; that he fell off on an embankment." No witness seems to have seen the appellee when he fell from the train, but the appellee introduced several witnesses whose testimony tended to show that all of the coaches composing the train were overcrowded, and that for this reason there were passengers standing in all the aisles and on all the platforms of the cars.

The evidence for appellant, on the contrary, tended to show that the train consisted of eight passenger coaches with 480 seats, and that there were 475 passengers on the train; that there was a baggage car also on the train, in which soft drinks were sold to the passengers, and that from 12 to 20 of the passengers rode in that car; that the conductor had five or six assistants; and that when not on duty they occupied seats in the rear half of the rear car, which was a compartment car, and in which compartment the evidence tends to show there were about 30 seats. The evidence was in dispute as to whether the passengers on the train were permitted to occupy the rear half of the compartment in

which the conductor and his assistants had seats. Of course if there were only 475 passengers on the train and 480 seats, and if from 12 to 20 of the passengers rode in the baggage car where refreshments were being sold, then there was necessarily a seat on the train for each passenger, provided the passengers were not denied the right to seats in the rear compartment of the rear coach. The evidence of appellee tended to show, as above stated, that all the seats (except those in the said rear compartment) were not only occupied, but that the aisles and platforms were also filled with passengers. The conditions existing on the train at the time of the accident, if the theory of appellee be the true one, can only be explained by the fact that there were either more than 475 passengers on the train or that the train contained either less than eight passenger coaches, or, if eight passenger coaches, then that the coaches contained considerably less than an average of 60 seats each. Indeed, one of appellee's witnesses testified that he "thought"—and by the word "thought" he evidently meant that it was his best recollection—the train had only six passenger coaches. On the contrary, if the theory of appellant is the correct one, then the appellee, at the time of his injury, was standing on the platform, not because of a lack of seats in the coaches, but because he preferred to stand on the platform. In fact, there was evidence from which the jury had a right to infer that the appellee left his seat and went upon the platform because a woman near him made some objection to his chewing tobacco and spitting near her in the coach. There was nothing out of the ordinary in the operation of the train between Hull and Birmingham, and the evidence discloses that appellee's injuries would not have occurred if he had not been on the platform at the time of his injuries.

1. "It is negligence, except under special circumstances, for a passenger to stand upon the platform of a car of a rapidly moving commercial railroad train. The inevitable lurching and jerking of a train so propelled makes the danger obvious to the ordinary understanding, and the negligence self-evident."—*Clanton v. Southern Ry. Co.,* 165 Ala. 85, 51 South. 616, 27 L. R. A. (N. S.) 253; *Central of Ga. Ry. Co. v. Brown,* 165 Ala. 493, 51 South. 565; *McCaw v. Union Traction Co.,* 205 Pa. 271, 54 Atl. 893; *Lehr v. Steinway & H. P. R. Co.,* 118 N. Y. 556, 23 N. E. 889. Necessity alone can warrant the assumption by a passenger of a position upon the platform of a rapidly moving commercial train. Mere considerations of personal comfort or choice cannot justify or excuse such action.—*Worthington v. Central Vt. R. R. Co.,* 64 Vt. 107, 23 Atl. 590, 15 L. R. A. 326. Was it necessary, then, for appellee, at the time of his injury, to be upon the platform?

The appellant, having contracted with him to carry him on one of its trains as a passenger from Hull to Birmingham, owed appellee the duty to furnish him with a reasonably safe pace within which to ride. It owed him the duty to place him on a train containing sufficient seats for all the passengers on that train, and if it placed him on an overcrowded train and his presence on the platform at the time of his injuries was due to that fact, then his mere presence upon the platform constitutes no defense to this action.—*Central of Ga. Ry. Co. v. Brown, supra; Willis v. Long Island R. R. Co.,* 34 N. Y. (Court of Appeals, Tiffany, 7) 670.

In this case, as the appellee was standing on the platform when the injury occurred and, according to his theory of the case, was thrown from the platform by that lurching or jerking of the train which is commonly known to be a necessary incident to a rapidly moving

train, the burden of proof is upon appellee to show that his presence on the platform was due to the overcrowded condition of the train.—*Central of Ga. Ry. Co. v. Brown, supra; Chicago & West Indiana R. Co. v. Newell,* 212 Ill. 332, 72 N. E. 416; *Trumbull v. Donahue,* 18 Colo. App. 460, 72 Pac. 684; *Lake Shore & M. S. Ry. Co. v. Kelsey,* 180 Ill. 530, 54 N. E. 608; *Rolette v. Great N. Ry. Co.,* 91 Minn. 16, 97 N. W. 431, 1 Ann. Cas. 313.

2. In this case there were six counts to the complaint, but as the court charged the jury that they could not find, if they believed the evidence, for the appellee under counts 1, 2, and 6, we have before us, for our consideration, only counts 3, 4, and 5. We will now consider the case as presented by count 3, which is a count for simple negligence.

In count 3 the appellee alleges that "his said injuries were proximately caused by the negligent manner in which the defendant (appellant here) operated the train upon which plaintiff (appellee here) was riding."

"Common or popular words are to be construed in their popular sense, common-law words according to their common-law meaning, and technical words according to their technical sense; as a general rule words are to be taken in their ordinary or popular sense unless it plainly appears that they were used in a different sense."—*Mobile Dry-Docks Co. v. City of Mobile,* 146 Ala. 198, 40 South. 205, 3 L. R. A. (N. S.) 822, 9 Ann. Cas. 1229; 6 Mayfield's Dig. p. 943, § 16.

The words "operated the train," as used in count 3, evidently mean "controlled the movement and speed of the train," and we think it apparent that appellee in count 3 intended to charge, and does in fact charge, that his injuries were due to the negligent manner in which the servants of appellant controlled the movement and speed of the train on which he was traveling at the

time of his injuries. We do not think that it can truthfully be said that appellee intended to charge, or that he did in fact charge, in said count that his injuries were due to the failure of appellant to perform its duty to him in furnishing him with a reasonably safe place within which to remain on said train while he was a passenger. It is evident that it is appellee's theory that he has a right to recover under this count, because, as his evidence tends to show; appellant so crowded its train with passengers that he could not obtain a seat in the train but had to stand on the platform along with other passengers, and that, this being the condition of the train, it was an act of negligence for appellant's servants to run its train at the rate of speed at which it was being run when appellee sustained his injuries. This view is strengthened by the allegations of the fourth and fifth counts, in which the fact that there were passengers standing on one of the platforms is alleged to have been the condition (known to the conductor) of the train at the time of the injury, and in which the rate of the speed of the train, with its known probable results, is charged as the act of alleged wantonness.

We do not think that there can be any doubt about the correctness of the proposition that, when a commercial railroad company overcrowds one of its trains with passengers, such overcrowding imposes on the servants in control of that train the duty of exercising a care proportioned to the risk to the safety of the passengers caused by such overcrowding.—*McGraw v. Union Traction Co., supra; Lehr v. Steinway & Hunter's Point R. Co., supra; Jacobs v. West End Street Ry. Co.,* 178 Mass. 116, 59 N. E. 639; American Railway Law (Baldwin) p. 312, § 8.

While under our view of this case, accepting all of the tendencies of appellee's evidence as true, the correct

theory of appellee's right to recover—if the triers of the facts find that he possesses that right—is that, on account of a breach of duty which appellant owed appellee in that appellant overcrowded its train, appellee was compelled to stand on a platform of one of its cars, and while so standing, and while exercising such care as ordinary prudence demanded of him to avoid injury which the extra risk necessarily incurred (American Railroad Law, Baldwin, p. 311), was thrown from or fell from said platform and was injured, nevertheless we cannot hold, as matter of law, that, under the tendencies of appellee's evidence above stated, it was not negligence for the appellant's servants to run its train at a rate of 30 or 35 miles per hour although that may have been the usual, customary, and proper rate of speed for appellant's ordinary passenger trains.—*B. R. L. & P. Co. v. Murphy,* 2 Ala. App. 588, 56 South. 817. We are therefore of opinion that under all of the evidence, with its various conflicts, the trial court was free from error in refusing to charge the jury, at the written request of appellant, that, if they believed the evidence, they should find for appellant under the third count of the complaint.

The third count of the complaint, under repeated decisions of the Supreme Court, is sufficient and was not subject to appellant's demurrer.—*American Co. v. Fennell,* 158 Ala. 484, 48 South. 97; *T. C. I. & R. R. Co. v. Smith,* 171 Ala. 251, 55 South. 171; *Central of Ga. Ry. Co. v. Edmondson,* 135 Ala. 336, 33 South. 480; *Central of Ga. Ry. Co. v. Brown, supra.*

4. In our efforts to ascertain and declare the true rules of law which should govern this controversy, we have carefully reviewed all of the leading authorities, and we have found no case in which it was held to be wanton negligence for a train crew to run an overcrowded train—a train on which some of the passengers

were, ex necessitati, on the platforms of the cars—at the usual and customary and proper rate of speed for a train on the particular road which was not overcrowded. When a train is overcrowded, a passenger who cannot obtain the accommodations to which he is entitled may refuse to ride upon that train, and the train crew, if he elects to ride upon that train to stand upon a platform of a car, have a right to presume that, in assuming the extra hazardous position upon the train, he will, so far as he reasonably can, protect himself from being thrown from the train by a "lurch or jerk no more than the lurching or jerking of trains known to be a necessary incident to their rapid movement when operated with due care." American Railroad Law (Baldwin) 311.

The law recognizes that the inside and not the outside, of a passenger coach is the place for the passenger when the train is in motion, and, if, while the train is in motion, a passenger is injured by reason of the fact that he is on a platform of a car instead of in the car, will permit no recovery by such passenger for such injuries unless a reasonable and legally sufficient excuse is given by the passenger for his presence on the platform at the time of his injury, and it reasonably appears that while on the platform he took reasonable precautions to protect himself from injury.—*Central of Ga. Ry. Co. v. Brown, supra; Watkins v. Birmingham Ry. & Elec. Co.,* 120 Ala. 147, 24 South. 392, 43 L. R. A. 297; *Graham v. McNeill,* 20 Wash. 466, 55 Pac. 631, 43 L. R. A. 300, 72 Am. St. Rep. 121. In other words, the conductor of an overcrowded train has a right to presume that a passenger, who assumes a position on a platform of a car and occupies that position during the journey will take precautionary measures to protect himself from the obvious

dangers to which his position subjects him, and that therefore a conductor, so situated, cannot be said to be guilty of wanton negligence who runs his train at the usual, proper, and customary speed of a train on his road which is not overcrowded. As the law requires a passenger so situated to take precautionary measures for his safety, and denies to him the right to recover in an action for simple negligence for injuries so received unless he does so, it cannot, we think, be truthfully said that a conductor so situated, who runs his train at the usual, proper, and customary speed for ordinary passenger trains on his road, can be said to be guilty of an act which in law amounts to legal malice.—*Birmingham Water Works Co. v. Keiley,* 2 Ala. App. 629, 56 South. 838; *Leinkauf & Strauss v. Morris,* 66 Ala. 406; *Wilkinson v. Searcy,* 76 Ala. 176; *Willis v. Miller* (C. C.) 29 Fed. 238.

It must be remembered that on all well-regulated railroads the maintenance of a proper schedule by each train is a matter of public importance, and upon the conduct in that regard of those in charge of trains, in a large degree, depends the safety, and frequently the lives, of members of the traveling public. In the present instance the conductor of appellant's train knew, when he left Hull station, when, under his schedule, his train was expected to reach, and should reach, each station between Hull and Birmingham. He knew that other trains were running upon that railroad and that their schedules, the points where they were to meet each other, and their arrival at and departure from stations, were all matters which were in some measure based upon the assumption that his train would maintain its own schedule. While the crowded condition of his train— if it was as crowded as some of the evidence tends to show—imposed upon him and his assistants the duty

of seeing that the train should be carefully controlled and properly run, we do not think that the mere fact that he, under the circumstances shown by this record, ran his train in accordance with his schedule and in accordance with the rate of·speed usually observed by well-equipped passenger trains on his road can be held to be an act from which wantonness can reasonably be inferred. There are many cases in the books where passengers falling from the platforms of overcrowded trains while running at the usual rate and cumstomary rates of speed have been permitted to recover upon grounds of simple negligence, but we have found no case, and we have not been cited to any, where, under such facts and such facts only, exemplary damages have been allowed. It is true that in all the reported cases to which our attention has been called which treat of this subject —and in some of them the facts were similar, in many respects, to the facts of the present case—exemplary damages have not been claimed, but this fact persuades us to believe that in those cases it was believed that they were not recoverable.

It seems to us, therefore, that the trial court committed an error in refusing to charge the jury, at the written request of appellant, that, if they believed the evidence, the appellee was not entitled to recover under the fourth and fifth counts of the complaint. We have not deemed it necessary to discuss the questions raised by appellant as to the sufficiency of counts 4 and 5, as under our view of the law, under the tendencies of the evidence most favorable to appellee, this is not a case for the infliction of exemplary damages.

5.   While, as we have already stated, we do not think that the trial court erred in submitting the issues presented by the third count of the complaint to the jury, nevertheless it seems to us that, if the tendencies of ap-

pellee's evidence are to be accepted as presenting the truth of this matter, the negligence of apellant consisted not so much in the operation of the train by the appellant's servants as in the failure of appellant to furnish appellee a safe place in which to remain while upon the train. Of course the appellee, if he sees proper so to do, can amend his complaint so as to meet this tendency of his evidence. The court, for its guidance upon the next trial, is referred to the cases of *Central of Ga. Ry. Co. v. Brown,* 165 Ala. 493, 51 South. 565, and *John H. Graham v. E. McNeill,* 20 Wash. 466, 55 Pac. 631, 43 L. R. A. 300, 72 Am. St. Rep. 121. In these cases the law, as applicable to the facts of this case, is plainly and succinctly stated.

6. We have, in the above opinion, carefully considereded the meritorious questions presented by this record. There are a number of other questions presented by the record and argued in the briefs of counsel, but we do not deem it necessary to review them.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a judge of this court, and is adopted by the court.