# Mobile Light & R. R. Co. *v.* Hughes.

## *Injury to Passenger.*

(Decided November 7, 1914. Rehearing denied December 17, 1914.
67 South. 278.)

1. *Carriers; Passenger; Conductor; Negligence.*—As a conductor of a street car is in control of the movements of the vehicle, he is negligent if he permits the motorman to proceed at so excessive a rate of speed as to endanger passengers.

2. *Same; Motorman.*—Where a motorman propels his vehicle at so excessive a rate of speed as to endanger passengers, he is guilty of negligence.

3. *Same; Duty of Carrier.*—Where a street railway company permits passengers to ride on the steps and platforms of vehicles, it is under duty to exercise care proportionate to the risk incurred by the overcrowding.

4. *Same; Who are Passengers.*—One riding on the steps or platform of an overcrowded car is a passenger where he is able to and expects to pay fare, and the street car company customarily receives and accepts fare from such passenger.

5. *Same.*—It is the duty of those in charge of a street car to exercise the highest degree of care known to careful persons engaged in the same business to avoid injury to passengers.

6. *Same; Negligence.*—It is not contributory negligence, as a matter of law for passengers on a crowded street car to ride on the steps where the company countenances such practice.

7. *Same; Instruction.*—Where the evidence showed that a street car company customarily received passengers greatly in excess of the seating capacity of its cars, a charge that if passengers were riding on the steps because of the crowded condition of the car and the platform, it was the duty of the motorman and conductor to avoid injuring him by the exercise of skill and care, was properly given.

8. *Witnesses; Examination; Responsiveness.*—Where the question was as to where the conductor was, a response that he was up in front and could not see the passengers, the last portion of the response was not responsive to the question, and was properly excluded.

9. *Charge of Court; General Terms; Explanatory.*—In the absence of an explanatory instruction on request, a charge that plaintiff if not guilty of contributory negligence, was entitled to recover, if injured in the manner alleged in the complaint as a proximate consequence of defendant's negligence, was not so defective as to require reversal.

10. *Same; Duty to Request.*—Where a defendant fails to request appropriate counter charges, he cannot complain of the giving of a charge for plaintiff, because it possessed misleading tendencies.

11. *Same; Construction.*—A charge directing the jury, if they were satisfied that plaintiff was entitled to recover, to consider whether he suffered mental and physical pain on account of the injury, and if satisfied from the evidence that, as a proximate consequence, of the injury to his leg, he did suffer mental and physical pain, to find for plaintiff, and to render such verdict as should be sufficient to compensate him, is not objectionable as directing a verdict for plaintiff, when taken as a whole and considered with other instructions submitting the right of recovery.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by Edward Hughes, Jr., against the Mobile Light & Railroad Company, for damages to him as a passenger. Judgment for plaintiff, and defendant appeals. Affirmed.

The ninth count is as follows: Plaintiff, Edward Hughes, Jr., * * * claims of defendant * * * the sum of * * *, as damages for that heretofore, to wit, on November 16, 1912, while defendant was engaged in the operation and control of electrically propelled street cars along and upon the public streets of the city of Mobile and suburbs thereof, including Spring Hill Road, and while plaintiff was a passenger upon one of said cars on said Spring Hill Road, * * * an employee of defendant, to wit, the conductor in charge of said car, negligently caused plaintiff to be injured in this: That the said conductor then and there observed that the said car upon which plaintiff was a passenger was so crowded with passengers that it became necessary for some of the passengers to crowd upon the platform and steps of said car, and that the said passengers upon the steps of said car, or some of them, would be in danger of being thrown from the platform or steps thereof, if said car was operated at a rapid rate of speed, but that the said conductor nevertheless negligently permitted the said car to be operated at a rate of speed which was dangerous and too rapid under the said circumstances then known to him,

and as a proximate result thereof, of the said negli-gence of the said conductor, the plaintiff, who was then and there unable to get-inside said car or upon the platform thereof, because of the crowded condition thereof, and was standing on the steps of said car, was jostled, knocked, or thrown from said steps, and, in falling, one of his legs was crushed and mangled, so it became necessary to amputate it, and as a result thereof plaintiff suffered * * * and was rendered a cripple for life, and was permanently rendered less able to earn a livelihood.

The tenth count is exactly like the ninth, except that the word "motorman" is substituted for the word "conductor," where it is used in the ninth count. The demurrer to the ninth count points out that this count contains no allegation that the conductor had any control over the motorman of the car, or that he had any supervision or control over the rate of speed at which the car was operated, and that the count contains no allegation that the rate of speed at which the car was operated was at all excessive, under the circumstances. The question raised by demurrer to the tenth count was whether, when a passenger voluntarily assumes a place of danger upon a car or train upon which he is riding, does it thereby become the duty of the engineer or motorman to so operate the train or car as to make it safe for the passenger to ride in the improper position which he has voluntarily assumed, or does the passenger thereby assume the extra risk which he has imposed upon himself by voluntarily undertaking to ride in such dangerous position while the train is being operated in an ordinary manner and at an ordinary speed?

The charges given for plaintiff are sufficiently set out in the opinion, except charge A, which is as follows: The court charges the jury that it is not neg-

ligence, as a matter of law, for a person to ride on the step of a street car.

GREGORY L. & H. T. SMITH, for appellant.

WEBB & McALPINE, and SHELTON SIMS, for appellee.

DE GRAFFENRIED, J.—This case was tried upon the fifth, seventh, eighth, ninth, and tenth counts of the complaint. The trial court overruled the defendant's demurrers to the ninth and tenth counts of the complaint, and the action of the trial court in so ruling is here appropriately assigned and pressed upon us as error. The reporter will therefore set out the ninth and tenth counts of the complaint.

(1-3) 1. It is necessary, in the practical operation of every business, that there shall be a head to that business. From the largest ocean liner to the smallest ferryboat there must be some one who is the master of the boat and whose word, when spoken in the line of his duty, shall be the law of that boat. A railroad train must be run on schedule time, and the conductor of that train (as well as the engineer) is a person who, in the eyes of the law, is responsible for the maintenance of a proper rate of speed upon that train. An engineer in charge of a locomotive may commit an act of negligence *in running his train at an excessive rate of speed,* and the conductor of that train may, at the same time, be guilty of an act of negligence *in permitting the engineer to do so.* The conductor of a street car is the master of his car, just as a conductor of an ordinary passenger train is the master of his train, and the conductor of a street car occupies the same relation to his motorman as the conductor of an ordinary railroad train occupies to his engineer. While it is ac-

tionable negligence (in case of injury proximately therefrom) for an engineer in charge of an ordinary railroad train, or a motorman in charge of a street car, to run his train or car at an excessive rate of speed, we think it can be safely affirmed that it is also negligence for the conductor of a train or street car to permit his engineer or motorman to run his train or car at an excessive rate of speed.—*A. G. S. R. R. Co. v. Gilbert,* 6 Ala. App. 372, 60 South. 542; *Birmingham Railway, Light & Power Co. v. Jung,* 161 Ala. 49 South. 434, 18 Ann. Cas. 557.

It is not uncommon, when open cars are used by street car companies, and large crowds are being handled, to see the interior of a street car crowded with passengers, and to also see passengers standing upon the foot boards and steps of the cars. Such conditions, when they are permitted to exist, impose upon those in charge of such a street car a duty of care with reference to their passengers, proportioned to the risk which is caused to the passengers by such overcrowding.—*A. G. S. R. R. Co. v. Gilbert, supra.*

The ninth and tenth counts of the complaint were not subject to the defendant's demurrer.

2. While testifying as a witness on behalf of the defendant, the conductor of the car, from which the plaintiff fell and received his injuries, testified as follows: "I had complete control of the management and operation of the car. * * * It was the duty of the motorman to stop when I rang the bell, to start when I told him to start, and to slow down or go fast as I instructed him."

In addition to the above testimony of the conductor as to his authority over the car, the jury, out of the conflicting evidence, had the right to find (and we presume did in fact find) that the plaintiff, at the time he

received his injuries, was a passenger upon a street car which was largely overcrowded, and that the car was, to use the language of one of the witnesses, traveling as fast as the electricity could carry it. This condition of the testimony illustrates the necessity for, and the wisdom of, the rules which we have above announced with reference to the duties of conductors of street cars in connection with the speed of overcrowded cars and the care which the law requires of them with reference to their passengers when they see proper to permit their cars to become overcrowded.—*A. G. S. R. R. Co. v. Gilbert, supra.* In this connection, however, it may not be out of place to call attention to the fact that passengers, when they voluntarily assume exposed positions on overcrowded trains or street cars, assume some risks which do not attach to passengers who are not so exposed. This particular assumption of risk was discussed in *A. G. S. R. R. Co. v. Gilbert, supra.*

(4) 3. During the examination of a witness (John Montgomery), the defendant asked him, "Where was the conductor at that time?" The witness replied, "He was up in front of the car. *He did not see him at all.*" The witness, by the sentence italicized by us, told the jury that the conductor did not see the plaintiff. The trial court, on motion of the plaintiff, excluded from the jury the said statement, "He did not see him at all." In doing this the trial court was free from error. The contention of the appellant is that the above statement of the witness was the statement of a collective fact, and in support of its contention the appellant cites us to numerous cases in which, in holding certain statements of witnesses to be admissible in evidence as statements of collective facts, this court has indicated a liberal policy in upholding trial courts in their efforts to unfetter (so far as the limits of propriety will ad-

mit) the examination of witness. It has, however, been the rule of this court to uphold trial courts in excluding from juries, upon appropriate motions, statements of witnesses which were not responsive to questions propounded to them, but which were (whether with innocent or bad motives) volunteered by them in answer to legitimate questions propounded to them. The sentence which we have above italicized was a mere volunteer statement of the witness, and an examination of the question to which it was given as an answer will show that this statement was not only not called for by the question, but that it was plainly and palpably a mere volunteer statement of an opinion of the witness. The action of the trial court in excluding this statement from the jury is sustainable upon this ground alone.—*Sloss-Sheffield Steel & Iron Co. v. Sharp,* 156 Ala. 284, 47 South. 279; *Shrimpton & Sons v. Brice & Donehoo,* 109 Ala. 641, 20 South. 10.

(5) 4. The following part of the oral charge of the court to the jury is pressed upon us as having been erroneous: "Now, as to who is a passenger: if you are reasonably satisfied from the evidence that the plaintiff, when he got on this car, did so with the bona fide intention of becoming a passenger and paying his fare when demanded by the conductor, and had the money to pay his fare, then he was a passenger, in contemplation of law."

This portion of the oral charge of the court must be read in connection with the following other portion of that charge which immediately succeeds it: "If you are reasonably satisfied from the evidence that, at and before the time the plaintiff claims to have been injured, it was the established general usage and practice of the defendant, in the operation of its cars, to carry large numbers of passengers on its cars in excess of

their seating capacity, and permitted persons to ride on the platform and steps of its cars, without objection, and demanded and collected fares from them, and such was the usage and practice with reference to this particular car, then the fact, if it be a fact, that plaintiff, at the time he claims to have been injured, was riding on the steps of the car, would not alone prevent his being a passenger, if he was there with the bona fide intention of becoming a passenger, and intending to pay his fare when it was demanded of him, and had the money to pay it."

When the oral charge of the court, which we have above quoted, is read in connection with all of the undisputed evidence in this case, we think that it correctly states the law. In fact, we take it, from a careful examination of this record, that the plaintiff was, at the time of his injury, a passenger, unless he was, in accordance with the theory of the defendant, simply stealing a ride for a few blocks. It seems from the evidence that it was the custom of the defendant to collect fares, not when passengers boarded its cars, but at the convenience of the conductor, after they had been boarded by the passengers. It also appears that but little, if any, attention was paid by the defendant, in the matter of handling its passengers, to the mere seating capacity of its cars. The conductor of this particular car testified that on the named occasion he had about 75 passengers on the car; that the car would carry 125 or 130 passengers at a time; that he had carried that many at times; and that the car would *seat only forty-eight people.* There was evidence, contradictory of that of the conductor, tending to show that on this occasion the car had on it all of the people who could get upon it; that it was bringing a crowd from a baseball game; and we think that undoubtedly,

if the plaintiff boarded that car with the intention of paying his fare and of becoming a passenger, instead of merely stealing a short ride, then he was, at the time of his injuries, a passenger. All the evidence shows that the plaintiff boarded the car at a point where those intending to become passengers had a right to get upon defendant's cars, and where the plaintiff had a right to assume that, if he boarded the car, he would in fact become a passenger.

(6) 5. The court, at the written request of the plaintiff, gave to the jury the following written charge: "The court charges the jury that, if they are reasonably satisfied from the evidence in this case that the plaintiff was a passenger upon the street car of the defendant at the time of his injuries, then it was the duty of the employees of the defendant, then in control of said car, to exercise the highest degree of care, skill and diligence known to very careful, skillful, and diligent persons engaged in like business, to avoid injury to plaintiff; and it is for the jury to determine, under the evidence, whether or not such care, skill, and diligence was exercised by the employees then in control of the said sar."

Under the authority of *Louisville & Nashville Railroad Co. v. Glascow,* 179 Ala. 251, 60 South. 103, and *Birmingham Railway, Light & Power Co. v. Barrett,* 179 Ala. 274, 60 South. 263, and *Southern Railway Co. v. Cunningham,* 152 Ala. 147, 44 South. 658, the above charge states a correct proposition of law.

(7) 6. The trial court, at the written request of the plaintiff, charged the jury as follows: "If the jury are reasonably satisfied from the evidence that the plaintiff was injured in the manner and form alleged in the complaint, as a proximate consequence of defendant's negligence, as alleged therein, and that he was not guil-

[Mobile Light & R. R. Co. v. Hughes.]

ty of contributory negligence then you must find a verdict for the plaintiff."

Referring to a charge in substantially the same language as that of the above charge, this court, in *Birmingham Railway, Light & Power Co. v. Barrett, supra,* said: "The second written charge given for plaintiff required a verdict for her if the jury found that 'the material averments' of the first count were true, and that she was not guilty of contributory negligence. If this charge had any tendency to mislead the jury as to the proof of plaintiff's case, the defendant should have requested an explanatory charge."

An examination of the case of *Birmingham Railway, Light & Power Co. v. Barrett, supra,* will show that the questions determined in that case received, in the original opinion and in the opinion which was wrtten in response to the application for a rehearing, the most careful consideration of all of the members of this court. Upon the authority of that case, the trial court in this case cannot be put in error for giving the above-quoted charge to the jury.

(8) 7. The trial court, at the written request of the plaintiff, gave to the jury the following charge: "The court charges the jury that if they are reasonably satisfied from the evidence in this case that it was the defendant's general custom at and before the time of plaintiff's injury, to permit passengers to ride on the steps of its street cars, and to collect fares from such passengers, at times when such cars and their platforms were so crowded with passengers as to make it impossible for any more passengers to ride inside of the cars or on the platform, and if the jury are further reasonably satisfied from the evidence that such custom was then known to the motorman and conductor who were engaged in the operation of the car from which plain-

tiff claims to have fallen, then it was the duty of the motorman and conductor to know whether or not their said car was so crowded as to require any passengers to ride on the steps of the car, and, if any passengers were riding on a step or steps because of the crowded condition of the car and platform, it was the duty of the motorman and conductor to exercise skill and care in operating the car to avoid injury to such passengers."

There was evidence tending to show that the general custom of the defendant *was* as the above charge hypothesizes it to have been, and that this custom was known to the conductor and the motorman in charge of this particular car. We do not see how it is possible for a motorman in charge of a street car, which is so crowded with passengers as to require some of the passengers to stand upon the steps of the car, not to be apprised of that fact; and, when a car is in such condition, it is the duty of both the conductor and the motorman to so operate the car as to meet the increased responsibilities which are thus placed upon them.— *A. G. S. R. R. Co. v. Gilbert, supra; B. R., L. & P. Co. v. Jung, supra.*

The trial court committed no error in giving the above charge to the jury. It correctly states the law as applicable to some of the tendencies of the evidence in this case.

(9) 8. The trial court, at the request of the plaintiff, gave to the jury the following other written charge: "Gentlemen of the jury, if you are reasonably satisfied, from the evidence in this case, that there was, to the knowledge of the motorman and conductor in charge of the car upon which the plaintiff was riding, a general custom of defendant, at and before the time of plaintiff's injury, to permit passengers to ride upon the

steps of its street cars when the cars and platforms were so crowded as to prevent passengers from getting within the car or on the platforms, and if you are further reasonably satisfied from the evidence that the car upon which plaintiff was riding, and its platforms, were so crowded that plaintiff could not get upon the platforms or within the car, and that plaintiff was a passenger upon said car, then it was the duty of the motorman and conductor to exercise skill, care, and caution in the operation and management of the car, so as to avoid injury to plaintiff, and this was their duty, whether or not they actually saw that there was a passenger upon the steps, for, under such circumstances, the law charged them with the duty of knowing the situation of their passengers."

The above charge may have possessed a misleading tendency in that it might have been construed as meaning that the defendant company was under the duty, under the facts hypothesized in the charge, of preventing injury to passengers under any and all circumstances. If so, this misleading tendency could have been avoided by a countercharge, which the defendant does not appear to have asked. The court cannot be put in error for having given it.—*A. G. S. R. R. Co. v. Gilbert, supra; B. R., L. & P. Co. v. Jung, supra.*

(10) 9. Whether it is or is not negligence, as matter of law, for a passenger to ride upon the steps of a street car, depends upon the circumstances of each particular case. Under some of the tendencies of the evidence in this case, it was not negligence, as matter of law, for a passenger to stand upon the steps of the car at the time the plaintiff received his injuries. If this car was so crowded that the plaintiff had to stand upon the steps, and if the plaintiff was then a passenger, and if it was the custom (as some of the evidence tended

to show) for the defendant to permit passengers to stand upon the steps of its cars when the platforms and interior of its cars were crowded with passengers, then the question of negligence vel non of the plaintiff in assuming a position upon the steps was a question for the jury.—*A. G. S. R. R. Co. v. Gilbert, supra.*

The trial court cannot be put in error for giving charge A to the jury, at the written request of the plaintiff. If it possessed a misleading tendency, that tendency could have, if the defendant had requested it, been corrected by a countercharge.

(11) 10. The trial court, at the written request of the plaintiff, gave to the jury the following other written charge: "The court charges the jury that, if they are reasonably satisfied from the evidence in this case that the plaintiff is entitled to recover, then, in arriving at a verdict, it is the duty of the jury to consider whether or not the plaintiff suffered mental and physical pain on account of injury to his leg, and whether or not he was rendered a cripple for life; *and if the jury are reasonably satisfied from the evidence that, as the proximate result of his injury to his leg, he did suffer mental and physical pain, and was rendered a cripple for life, it is the duty of the jury to find for the plaintiff,* and to render such a verdict as the jury find to be sufficient to compensate the plaintiff for pain and suffering and his crippled condition, but, of course, your verdict could in no event be greater than the amount claimed in the complaint."

This charge, must, of course, be considered as a whole If the italicized part of it was considered alone, manifestly, it would, under the evidence, have amounted to the general affirmative charge in favor of the plaintiff. No such purpose was entertained by the court, as the entire proceedings on the trial demonstrate. When, as

must be done, the italicized part of the charge is considered in connection with the other, especially preceding, parts of it, clearly the meaning of the court could not have been mistaken. There was no error in giving said charge.

11. In the above opinion we have discussed those questions which, after a careful examination of the record, seem to deserve attention at our hands. To some of the questions discussed in briefs of counsel we have not referred, but we have carefully considered all of them, and we find that the trial court committed, as to them, no reversible error. This case was, under the pleadings and the evidence, one for the jury. The jury determined the issues in favor of the plaintiff; and, as we find no reversible error in the record, the judgment of the trial court must be affirmed.

Affirmed.

McClellan, Sayre, and Somerville, JJ., concur.