[No. 16631. Department One. November 16, 1921.]

JOHN E. CARTON, *Respondent*, v. EYRES & SEATTLE DRAYAGE COMPANY *et al., Appellants.*[1]

CARRIERS (78-2, 88)—PERSONAL INJURIES—COLLISION WITH VE-HICLE—OVERLOADING OR CROWDING CAR—QUESTION FOR JURY. While a carrier is not negligent in permitting a passenger, if he so chooses, to ride in a crowded car, yet a carrier's employees in charge of a car so crowded that passengers are obliged to stand, or occupy positions upon the platform or steps, are obliged to operate the car with due care in the light of those facts.

SAME. Whether a passenger voluntarily chose to board a crowded street car and whether the car was thereafter operated with due care in the light of its crowded condition, are questions for the jury.

SAME (102, 107) — OVERLOADING OR CROWDING CAR — PROXIMATE CAUSE OF INJURY—QUESTION FOR JURY. Whether the proximate cause of a passenger's injury was his position upon the steps of a street car, pressed so closely against the gate that he fell when the gate was torn off by a collision with a motor truck, is a question for the jury.

DAMAGES (109)—EVIDENCE—PHYSICAL CONDITION OF PERSON IN-JURED—ADMISSIBILITY. Evidence of the neurasthenic condition of plaintiff in an action for damages for personal injury was admissible under allegations of the complaint that injury to his head has caused him great pain; that he has suffered from loss of memory and his eyesight and hearing have been affected; that ever since the accident he has been incapable of mental activity, and suffers from despondency, mental and physical depression, and insomnia.

DAMAGES (81)—PERSONAL INJURIES—EXCESSIVE VERDICT. A judgment for $7,500 for personal injuries is excessive, and plaintiff should be required to remit $2,500, where the evidence shows he suffered no permanent injury, but is suffering from traumatic neurasthenia, which prevents his working full time.

Appeals from a judgment of the superior court for King county, Hall, J., entered February 25, 1921, upon the verdict of a jury rendered in favor of the plaintiff for $7,500 for personal injuries sustained by a passen-

[1]Reported in 201 Pac. 737.

ger through a collision between a street car and an auto truck. Reversed, unless $2,500 is remitted.

*James B. Murphy, Henry J. Gorin* and *Ward C. Kumm,* for appellant Eyres & Seattle Drayage Company.

*James B. Howe, H. S. Elliott,* and *R. G. Sharpe,* for appellant Puget Sound Traction, Light & Power Company.

*Ballinger, Battle, Hulbert & Shorts,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this action to recover for personal injuries received by him while a passenger on a street car operated by the Puget Sound Traction, Light & Power Company, in the city of Seattle, alleged to have been caused by the concurring negligence of both defendants, as a result of which negligence a collision occurred between the street car and an auto truck operated by the defendant Eyres & Seattle Drayage Company, and respondent suffered the injuries complained of.

The cause was tried to a jury, which rendered a verdict against both defendants in the sum of $7,500, and from a judgment thereon, the defendants prosecute separate appeals.

The negligence charged against the traction company in the complaint is: (1) in allowing respondent to board the street car when it was already filled beyond its capacity, so that it was impossible for him to get into the car or even upon the platform, and he was obliged to remain upon the steps, the gate behind him being immediately closed and the car started; (2) operating the street car at a high, dangerous and reckless rate of speed; and (3) failure upon the part of the motorman to keep a proper lookout and to have proper control of his car so as to see the auto truck

in time to avoid the collision, notwithstanding the negligence of the driver of the truck.

At the conclusion of the introduction of the evidence, counsel for the traction company moved that the question of the crowded condition of the street car be taken from the jury, for the reason that respondent's position upon the front steps of the car was not a contributing cause of the accident but an incident merely. This motion was denied, and an exception taken to the ruling. The trial court, in his instructions to the jury, read that portion of the complaint alleging negligence in permitting the respondent to board the car under the conditions hereinbefore set forth, and charged the jury:

"If you find from a preponderance of the evidence that the defendant traction company was negligent in one or more particulars substantially as alleged in plaintiff's complaint, and that said negligence was a proximate cause of plaintiff's injuries and plaintiff was damaged thereby, then your verdict should be for the plaintiff and against the said defendant traction company. If you do not so find, then your verdict should be in favor of the defendant traction company."

The traction company now urges that it was reversible error to refuse to take from the jury the question of the crowded condition of the car, and to expressly, by the instruction just referred to, submit to the jury this issue, for the reasons that respondent was shown to be the last passenger to board the car, and assumed the added risk, if any; that, under the conditions shown, the carrier was not negligent in permitting him to board the car and ride where he did; and, in any event, the fact that respondent was riding on the steps was not the proximate cause of the accident.

By appellant's abstract, respondent's testimony as to the conditions under which he entered the street car, as shown by his examination in chief, are as follows:

"I was hurt on March 26th. Skinner & Eddy's was down on Railroad avenue about five or six blocks south of King street. On the 26th of March, 1919, about 10 minutes after four, I was loaded on a street car just after I had ended my shift. There were about 10,000 men quitting in that shift. They had a terminal there where the cars were turned around, and they started them off so that a car left every fraction of a minute. They had a starter loading the cars from the front end and the conductor loaded them from the rear end. There was quite a crowd around the rear end of the car, so I ran up to the front end to get on in a hurry, where there were not so many men, and they let me on at the front end. I was the only man to get on there. When I got on I found it was so crowded that I could not get in any further, and they just barely got the gates closed. I didn't have time to notice this congestion until I got up there. The car started immediately after I got on. I tried to push farther into the car, but it was impossible because of its crowded condition. There were as many men on the steps as could get on —how many I could not say. There were about 15 or 20 men on the front platform. I couldn't see in the car because I could just barely turn my head. That is how tight I was jammed in. I was on the last step. After the street car started it stopped at Railroad Way, about two blocks from where we had started. There were no stops from there until the place of the accident, about two or three blocks beyond."

And on cross-examination:

"There were probably ten or twelve street cars waiting there at the shipyard. They would go out just as soon as they were loaded. I didn't notice particularly how many cars were ahead of the car I got on or how many back of it—probably one or two. The reason I did not get on one of the others was because I saw there were a great many men waiting around

and I saw a chance to get on and I ran and got on the front end of the car where nobody was getting on. I tried to get into the rear end first. There were probably 6 or 8 getting on the front end and 20 or 30 on the rear, and so I ran up to the front end because I thought I had a better chance to get on. I was the last man to get on the front end. I think there were two steps and the platform on the front end of the car which was a 500-style. I had one foot on the first step and one on the second step.''

Upon the subject of the over crowding of public conveyances the authorities are legion, and it would be a hopeless task to attempt to harmonize them. We think, however, that the great majority of the well-considered cases recognize these rules: (a) that a carrier is not negligent in permitting a passenger to ride in a crowded car if he chooses to do so, and (b) a carrier's employees in charge of a car so crowded with passengers that they are obliged to stand, or occupy positions upon the platform or steps, are bound to operate the car with due care in the light of those facts. *Kebbee v. Connecticut Co.*, 85 Conn. 641, 84 Atl. 329, Ann. Cas. 1913C 167; *Becker v. Interborough Rapid Transit Co.*, 128 App. Div. 455, 112 N. Y. Supp. 816; *Hansen v. North Jersey St. R. Co.*, 64 N. J. L. 686, 46 Atl. 718; *Mobile Light & R. Co. v. Hughes,* 190 Ala. 216, 67 South. 278; *South Covington & C. St. R. Co. v. Harris,* 152 Ky. 750, 154 S. W. 35; *Reem v. St. Paul City R. Co.,* 77 Minn. 503, 80 N. W. 638, 778. Adopting these rules, it is apparent that the trial court did not err in the ruling complained of, because it was for the jury to determine whether or not respondent voluntarily chose to board a crowded car, and if he did so choose, whether the car was thereafter operated with due care in the light of the known conditions. Nor can we say, as a matter of law, that respondent's position upon the steps, pressed so closely against the gate that

he fell when the gate was torn off by the collision, was not a proximate cause of the accident. No passenger, other than respondent, was, so far as here appears, injured, and it was for the jury to say whether respondent's position, involuntarily taken, as they might find it to be, was a cause but for which the injuries would not have been received. Perhaps, if requested, the traction company might have been entitled to have the jury instructed upon the "but for which" doctrine as defined in *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582, but the record here does not present that question.

We have carefully considered all of the traction company's other assignments of error, and aside from the one based upon the amount of the verdict, which will be considered in discussing the appeal of the drayage company, find none of them well taken. There was sufficient evidence to go to the jury upon each ground of negligence alleged, and the jury was properly instructed.

Turning now to the appeal of the drayage company. It is urged that the trial court erred in admitting testimony as to the neurasthenic condition of respondent, and permitting the jury to consider the same. The complaint, among other things, charges:

"That he has suffered great pain and will continue to suffer in the future; that the injury to his head has caused him great pain in the head; he has suffered from the loss of memory, and his eyesight and hearing has been affected. That ever since the said accident he has been incapable of mental activity and suffers from despondency and mental and physical depression and insomnia."

The only motion directed to this part of the complaint was one asking that the respondent be required to state which of his injuries were permanent, and we

think, in the absence of anything else, the complaint was sufficient to permit the introduction of the evidence complained of, even though in describing respondent's condition the expert witnesses used a term not mentioned in the complaint.

We find no error in the sustaining of objections to certain questions propounded to an expert medical witness, or in refusing the requested instruction of which complaint is made; but the length of this opinion precludes the discussion thereof.

The drayage company's final assignment of error was also raised by the traction company, and is to the effect that the verdict is excessive. The evidence tends to show that respondent was twenty years old at the time of the accident, had always enjoyed good health, was earning good wages as a driller, and that, following the accident, he was in bed for a week or two, confined to his home for a month or two thereafter, and went to work at light employment about three months after the accident; later obtained a position as a street car motorman, and still later as a checker on the docks, though he complains that, because of his physical condition, he could not work full time at any of these occupations, and frequently became so sick and exhausted as to be obliged to lay off for a time. Medical witnesses, including the doctor who attended him immediately after the accident, and those who examined him later, have not pointed out anything organically wrong with him, except one or two who say that his heart is slightly enlarged. "The heart was not very much enlarged—only very slightly. The enlargement did not alarm me, and might possibly have been the natural size for him. I meant that it was a little larger than the average heart of a person of that size."

There is little, if any, direct evidence that the injuries are necessarily permanent in character, and taking respondent's showing of the nature of his injuries, subsequent suffering and present physical condition as though admitted, we cannot find therein anything to justify the amount of the verdict. Respondent's condition is much like that described in *Mickelson v. Fischer,* 81 Wash. 423, 142 Pac. 1160, and, as in that case, may be classified as traumatic neurasthenia. It was there said:

"An allowance of damages in cases of traumatic neurasthenia touches the border of speculation at best, . . ."

We are convinced that the amount of the verdict in this case is so disproportionate to the injuries sustained as to indicate that the jury was influenced by passion and prejudice. We think a recovery of $5,000 is the extreme amount warranted by the most favorable view of the evidence.

If, within thirty days after the going down of the remittitur, respondent shall file a remission of all above $5,000, the judgment will stand affirmed for that amount; otherwise the judgment will be reversed and the cause remanded with instructions to grant a new trial. In either event, appellants will recover their costs in this court.

Parker, C. J., Mitchell, and Bridges, JJ., concur.