(No. 13311.—Reversed and remanded.)
JOHANNA WALSH, Defendant in Error, *vs.* THE CHICAGO
RAILWAYS COMPANY, Plaintiff in· Error.

*Opinion filed October 23, 1920.*

1. NEGLIGENCE—*degree of care required of street railway com-
pany in carrying passengers.* A street railway company is required
to do all that human care, vigilance and foresight can reasonably
do, in view of the character and mode of conveyance adopted and
consistent with the practical operation of the road, to safely carry
a passenger and to allow him safely to enter and leave one of
its cars.

2. SAME—*railway company must provide sufficient number of
cars to accommodate passengers.* As a railroad or street railway
company controls the operation of its cars and the number of pas-
sengers permitted to ride in each car, it. is the duty of the com-
pany to provide a sufficient number of cars to accommodate and
properly care for passengers.

3. SAME—*whether overcrowding of cars is negligence is a ques-
tion of fact.* Whether the overcrowding of street railway cars is
negligence on the part of the company is a question of fact for
the jury unless the character of the evidence makes it a question
for the court, but the exposure of a passenger to danger which
the exercise of reasonable foresight would have anticipated and
due care avoided is negligence on the part of the carrier, and push-
ing and crowding are not so unusual as not to be properly antici-
pated by the carrier.

4. SAME—*it is not negligence per se for street railway company
to allow passenger to ride on steps of car.* It is not negligence
*per se,* under all circumstances, for a street railway company to
allow a passenger to ride upon the steps or running-board of a
street car, and the question of contributory negligence of the pas-
senger in such case should be submitted to the jury.

5. SAME—*declaration alleging that plaintiff was injured by neg-
ligent overcrowding of car states a cause of action.* In an action
for damages by a passenger injured by a fall while attempting to
alight from a street car, a declaration which states that the in-
jury was due to the negligence of the carrier in allowing the car
to be overcrowded states a cause of action.

6. SAME—*carrier is responsible, if negligent, although miscon-
duct of third person contributes to the injury.* If a carrier fails in
his duty to a passenger it is responsible for the consequences of

its negligence although the negligence or misconduct of a third person contributes to the injury.

7. SAME—*plaintiff has a right of action against all or either of the persons contributing to his injury.* Where an injury is occasioned by the joint negligence of several, the person injured, if not himself in fault, may have his action against all or either of the persons causing the injury.

8. SAME—*what constitutes proximate cause of injury.* For a negligent act or omission to constitute the proximate cause of an injury the act need not be the sole cause nor the last or nearest cause, but it is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, produces the injury, or it is sufficient if the act sets in motion a chain of circumstances and operates on them in a continuous sequence, unbroken by a new or independent cause.

9. SAME—*when misconduct of passengers will not alter a carrier's liability.* .The misconduct of other passengers in a crowded street car from which the plaintiff fell while attempting to alight cannot reasonably be said to alter or lessen the carrier's liability on the ground that such misconduct was the proximate cause of the injury, where the action of the other passengers, under the evidence, may be said to have taken place concurrently with the carrier's conduct in overcrowding the car.

10. INSTRUCTIONS—*instruction should not intimate that certain witnesses are more credible than others.* It is for the jury to determine to what extent each witness is credible, and it is error to give an instruction on that subject so worded that under the circumstances of the case the jury might readily infer the court believed the witnesses for one side to be more credible than the others.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

HARRY P. WEBER, GEORGE W. MILLER, ARTHUR J. DONOVAN, and ARTHUR A. ANDERSON, (JOHN R. GUILLIAMS, and WARNER H. ROBINSON, of counsel,) for plaintiff in error.

THOMAS E. ROONEY, and FERDINAND GOSS, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The defendant in error brought an action in the circuit court of Cook county against the Chicago Railways Company, plaintiff in error, for injuries alleged to have been sustained by her while a passenger in the act of alighting from one of plaintiff in error's street cars July 10, 1918, in Chicago. A verdict and judgment for $1800 were given in her favor in the circuit court, which, on appeal, were affirmed by the Appellate Court for the First District. The cause has been brought here by petition for *certiorari* for further review.

The defendant in error was a single woman fifty-seven years old at the time of the accident, a dressmaker by profession, earning from $12 to $14 a week. She had been on a visit with friends on the south side in Chicago and on the afternoon of July 10 boarded a north-bound Halsted street car of plaintiff in error at Sixty-third and Halsted streets to return home. She testified that the car was only partially filled when she entered it; that she took a vacant seat about three or four seats from the rear; that there were then a number of vacant seats; that at Thirty-ninth and Halsted streets the car became crowded with passengers, mostly workingmen from the stock yards district; that she intended to change cars at Twelfth street, where there was an intersecting east and west car line; that when that point was reached, about six o'clock, she arose from her seat and was immediately pushed and jostled by those moving toward the exit, mostly men; that this crowding continued until she reached the platform, where she was pushed off by the crowd, against her resistance and without having been permitted to gain a sufficient footing to protect herself on the platform or the steps, and that she fell, injuring herself so she was unconscious for some time and did not regain consciousness until she found herself in a nearby drug store; that she asked that her family physician be

called, and when he came he took her in his automobile to
her home and she was kept in bed for several weeks by
the injury.

The testimony of defendant in error as to the manner
of her injury is contradicted by that of the conductor. He
stated that he had a few standing passengers at Twelfth
street but none on the rear platform, though there were
about seventy-five passengers at that point; that those who
wished to get off at Twelfth street had done so at the stop
on the south side of that street, where about eight or ten
got off and about the same number got on; that then he
rang the signal to go ahead, and after the car started and
had partly crossed Twelfth street the defendant in error,
coming towards the rear of the car, asked him if the cross-
ing was Twelfth street, and on being told it was, requested
that he stop the car, which he did on the north side of the
crossing, which is not a regular stopping point for north-
bound passengers; that when the car stopped, as defendant
in error went to get off a man got on at the same time,
but no other passengers got off there; that he did not know
whether the man getting on pushed against her or not, but
that she fell; that he then got off and picked her up and
walked with her across the street towards the drug store;
that he asked her if she was hurt and she said her back
was hurt, but that she talked jolly to him; that while he
was taking her to the drug store a supervisor of the rail-
ways company came to them and took charge of her, say-
ing he would look after her and for the conductor to go
back and look after his car. This supervisor corroborated
the conductor's testimony as to what happened after he
arrived, testifying that when defendant in error reached the
drug store she sat on a chair and talked rationally to him,
and that he remained with her until she was taken away
by her doctor, who called for her in an automobile. The
motorman of the car was not employed by plaintiff in error
at the time of the trial. He testified that a few men were

standing on the front platform at the time of the accident, but he did not know how many were on the rear platform or in the car; that he stopped at the south side of the Twelfth street crossing and two men on the front end got off; that after starting up, when he had reached about the center of the street, he got a bell to stop, which he did on the north side of the street crossing, and after waiting a short time for a signal to go ahead and not getting it, he looked back and saw the conductor on the street talking to an elderly lady.

There were two counts to the declaration. The first count alleged that it was the duty of defendant to use all due care and caution and to safely carry plaintiff and prevent the overcrowding of its car, but that defendant negligently, carelessly, improperly and recklessly suffered and permitted the overcrowding of said car and of persons who were then and there on the car, and that while plaintiff was using all due care and caution certain persons who were then and there upon said car did, by reason of the overcrowding of the car, run upon and against and pushed the plaintiff from out of the car and down to and upon the ground, causing her to be injured. The second count alleged that it was the duty of defendant to use all due care to safely carry the plaintiff while a passenger, but that defendant so negligently, carelessly, improperly and recklessly drove, managed and operated the car while she was a passenger and while she was exercising all due care, that she was thrown from the car upon the ground, causing her to be injured.

It is argued by counsel for plaintiff in error that no cause of action was stated in the declaration and that the preponderance of the evidence is against the defendant in error's claim; that the overcrowding of a street car is not negligence *per se,* and that there is no proof that any conduct of plaintiff in error's employees in the operation of the car, or any defect in the car itself, contributed in any

way to the accident; that the action of the passengers in crowding defendant in error off while the car was standing still was an entirely independent act of third persons, and therefore her injury gave rise to no action against the company.

A street railway company in operating its cars through its servants is required to do all that human care, vigilance and foresight can reasonably do, in view of the character and mode of conveyance adopted and consistent with the practical operation of the road, to carry safely a passenger. (*Tri-City Railway Co.* v. *Gould*, 217 Ill. 317; *North Chicago Street Railroad Co.* v. *Polkey*, 203 id. 225; *Chicago City Railway Co.* v. *Shreve*, 226 id. 530; *Sandy* v. *Lake Street Elevated Railroad Co.* 235 id. 194.) And this same rule necessarily applies to passengers while entering and alighting from cars. "While it is not negligence, as a matter of law, for a street railway to permit its cars to become overcrowded, the question of negligence in such case generally being left to the jury, yet the fact of such overcrowding may often constitute evidence of negligence on the part of the company, rendering it liable for injuries to a passenger resulting therefrom." (4 R. C. L. 1213; 1 Nellis on Street Railways,—2d ed.—sec. 313, and authorities cited.) In certain jurisdictions the courts have made a distinction with reference to the liability of the company for an accident, depending upon whether the passenger boarded the car before or after it became crowded. (*McCumber* v. *Boston Elevated Railway Co.* 207 Mass. 559.) A railroad or street railway company, however, controls the operation of its cars and the number of passengers permitted to ride in each of them. It is the duty of the company to provide a sufficient number of cars to accommodate and properly care for passengers. (*Lobner* v. *Metropolitan Street Railway Co.* 79 Kan. 811.) The exposure of a passenger to danger which the exercise of reasonable foresight would have anticipated and due care avoided is negligence on the

part of a carrier; and whether the overcrowding of cars is negligence is a question of fact, (1 Nellis on Street Railways,—2d ed.—sec. 313,) unless the insufficiency or the clear and undisputed character of the evidence makes it a question for the court. (10 Corpus Juris, 1075.) Decisions of certain States have recognized that under existing conditions in large cities, especially in rush hours, crowding is unavoidable. It was stated in *Lehberger* v. *Public Service Co.* 79 N. J. L. 134, that overcrowding is "a condition so common as to be familiar to every user of street cars in large cities and accepted by the public."

It would be difficult to state as a rule of law to what extent the passengers on a car can be protected from or guarded against the dangers attending crowding. There is bound to be more crowding in rush hours, going to and returning from work, and so long as the traveling public acquiesces in and helps create that condition by boarding · crowded cars, the situations will be so numerous where pushing and crowding are indulged in that in most cases the extent to which the conductor can exercise control over passengers while boarding and leaving cars will be a question of fact to be decided by the jury. Manifestly, there are some things a conductor can do and others he cannot do. It is his duty to refrain from giving a starting signal until every passenger wishing to alight has done so safely, and pushing and crowding are not so unusual as not to be properly anticipated by the carrier. In *Lehr* v. *S. & H. P. R. R. Co.* 118 N. Y. 556, it was stated that there are times when persons are so crowded together that the force they exercise, sometimes almost unconsciously, on each other, is such as to render accidents more probable than at other times, and whether there is negligence in the carrying of such a crowd is a question of fact for the jury. This court has more than once had occasion to consider the question whether it was negligence, as a matter of law, to ride upon the steps or running-board of a street car, and has

laid down the rule in such cases that the question of contributory negligence of the passenger should be submitted to the jury, to be determined from all the surrounding circumstances of the case; that it was not negligence *per se,* under all circumstances, for a carrier to allow a passenger to stand in such a place. "Whether it is negligence on the part of either in a particular case is a question of fact, but if no seat is furnished and the carrier permits a passenger to ride in that way the carrier assumes the duty of exercising the care demanded by the circumstances." (*North Chicago Street Railroad Co.* v. *Polkey, supra,* on p. 232; *Petersen* v. *Elgin, Aurora and Southern Traction Co.* 238 Ill. 403, and cases cited; *Chicago and Alton Railroad Co.* v. *Fisher,* 141 id. 614.) In the case before us, the defendant in error, when she entered the car, was able to get a seat and the car was not then crowded, but according to her testimony it became so afterwards and before she reached her destination. In *Knaisch* v. *Joline,* 138 App. Div. (N. Y.) 854, the car became crowded after the plaintiff became a passenger, and in that case when the passenger wanted to get off she obtained a position on the platform next to the step, and while in that position, and before the car had reached the stopping place, she was pushed from the car by another passenger who was apparently endeavoring to push his way through the crowd onto the platform before alighting. The court there said (p. 856): "There can be no doubt that the jury may find negligence from such overcrowding of cars as exposes the passengers to danger."

The habits of passengers on street cars are well known. When they are nearing their destination they become impatient and hasten towards the exit and frequently push and crowd in order to get out quickly. Carriers are bound to know such facts and conduct their business with such facts in mind. If they accept too many passengers or run cars so infrequently as to cause too many passengers to seek to ride on each car they must be held responsible for any re-

sult which reasonably ought to have been anticipated. By the weight of authority as well as of sound principles of justice we are of the opinion that the first count of the declaration stated a good cause of action.

. Counsel for plaintiff in error also argue that the crowding and pushing off of the defendant in error was the conduct of the passengers and was not simply the result of the overcrowding of the car; that the overcrowding was not the proximate cause of the accident. , "Where it is sought to hold a carrier liable for personal injuries to a passenger, the usual rule applies that there can be no recovery for the negligent acts of another unless they were the proximate cause of the injury complained of.  *  *  *  If the act of the carrier was a mere condition and not the proximate and efficient cause of the injury, and if the plaintiff was free from fault and guilty of no negligence, then the occurrence must be classed as an accident for which there can be no recovery. Within this rule, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act and that it ought to have been foreseen in the light of the attending circumstances." (4 R. C. L. 1141.) If a carrier fails in his duty to a passenger he is responsible for the consequences of his negligence although the negligence or misconduct of a third person contributes to the injury. When an injury was occasioned by the joint negligence of several, the person injured, if not himself in fault, may have his action against all or either of the persons causing the injury. (4 R. C. L. 1143.) To constitute proximate cause the negligent act or omission need not be the sole cause nor the last or nearest cause, but it is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, produces the injury, or if it sets in motion a chain of circumstances and operates on them in a continuous sequence,

unbroken by a new or independent cause. (*Seith* v. *Commonwealth Electric Co.* 241 Ill. 252.) The action of the passengers, according to the testimony of defendant in error, took place concurrently with the carrier's conduct in overcrowding the car, and under the authorities cannot reasonably be said to alter or lessen plaintiff in error's liability.

Counsel for plaintiff in error further argue that instruction 5 given on the trial for defendant in error was prejudicial to plaintiff in error. That instruction reads:

"The court instructs the jury that the testimony of one credible witness may be entitled to more weight than the testimony of many others, if, as to those other witnesses, you have reason to believe, and do believe, from the evidence and all the facts before you, that such other witnesses have knowingly testified untruthfully as to any material fact or circumstance and are not corroborated by other credible witnesses or by circumstances proved in the case."

Defendant in error's testimony was very different from that of the witnesses for plaintiff in error as to how she was injured. Two witnesses, corroborated by a third as to certain of the facts, stated that the car had crossed Twelfth street before the accident happened and that no passengers were getting off at the time defendant in error alighted. She testified that she was crowded off the car at the time the other passengers were leaving the car. This made a direct conflict between the testimony of three witnesses for plaintiff in error on the one part and that of defendant in error. While other witnesses testified for defendant in error as to certain other aspects of the case, she alone testified on her side as to how the accident happened. Under the circumstances of this case there is merit in the argument of counsel for plaintiff in error that the jury might believe that the court intended to instruct them that the testimony of defendant in error outweighed the testimony of the witnesses for plaintiff in error as to how the accident happened. It is for the jury to determine to what extent each witness

is credible, and it is error for the court to instruct them as to what witnesses are credible. The instruction might also tend to cast a suspicion upon the credibility of the plaintiff in error's witnesses with reference to their testimony as to how the accident happened. An instruction of the character of the one here in question can only be offered when so worded that it does not single out witnesses from one side' or the other, so that it might apply to any witness in the case, without reference to whether he was called by plaintiff or defendant. We find nothing in the testimony that would serve as a basis for an intimation to the jury that any of the witnesses for the plaintiff in error had knowingly or willfully testified falsely. Under the holding of this court in *Tri-City Railway Co.* v. *Gould, supra,* and *Johnson* v. *Farrell,* 215 Ill. 542, the giving of this instruction must be held to be error and prejudicial to the plaintiff in error. We do not think instructions 11, 12 and 16 given on behalf of plaintiff in error, in view of the facts in this case, cured the misleading character of instruction 5. While those instructions laid down the rules to be applied in determining the credibility of the witnesses, leaving the jury free to decide as to such credibility, instruction 5, as stated, might well lead the jury to think that the court was passing on the credibility of certain witnesses. We do not think any reversible error was committed with reference to the giving or refusing of any other instructions. In view of the misleading character of instruction 5 heretofore discussed as applied to the evidence in this case, we are compelled to hold that the giving of the same was reversible error.

The judgments of the Appellate and circuit courts will therefore be reversed and the cause remanded to the circuit court.                    *Reversed and remanded.*