Anna F. Jordan, Respondent v. St. Louis Public Service Company, a Corporation, Appellant.—103 S. W. (2d) 552.

St. Louis Court of Appeals. Opinion filed April 6, 1937.

T. E. Francis, F. X. Cleary and S. G. Nipper for appellant.

Eagleton, Waechter, Yost, Elam & Clark for respondent.

McCULLEN, J.—This is a suit for damages for personal injuries brought by respondent, as plaintiff, against appellant, as defendant. A trial before the court and a jury resulted in a verdict and judgment in favor of plaintiff and against defendant in the sum of $5,955.62. After an unavailing motion for a new trial, defendant brings the case to this court in due course by appeal.

Defendant owned and operated, as a common carrier of passengers for hire, a system of street railways in the City of St. Louis, Missouri, and as a part of said system it operated street cars upon numerous public open streets in said city, including Grand Avenue.

Plaintiff's amended petition alleged that on or about February 1, 1930, plaintiff was a passenger on a southbound Grand Avenue street car of defendant; that after she boarded said street car, defendant's agents and servants in charge thereof continued to take on passengers until said street car became overcrowded with passengers in its seats, aisles and passageways, and particularly in the passageway to the side exit of said street car, to such an extent as to be dangerous and unsafe for passengers and particularly plaintiff in riding thereon and in alighting therefrom; that when said street car stopped at the intersection of Grand Avenue and Cook Avenue at the usual place where defendant's southbound street cars received and discharged passengers, plaintiff was compelled by reason of the overcrowded condition of said street car to wedge and squeeze between other passengers who were standing in close proximity to each other in the passageway to the side exit of said street car, and while so doing and while attempting to alight from said street car and while exercising ordinary care for her own safety, she was caused to stumble against the feet or legs of another passenger and to fall from said street car to the street pavement, whereby she was injured.

The petition further alleged that plaintiff's injuries were the direct and proximate result of the negligence of defendant's agents and

servants as follows: (1) permitting said street car to become so overcrowded as to be dangerous and unsafe to passengers, particularly plaintiff, in riding therein and in alighting therefrom; (2) failing to discover the overcrowded condition of said street car and to avoid injury to plaintiff by clearing the passageway to the side exit thereof so that plaintiff could have alighted with reasonable safety; (3) failing to assist plaintiff in going through the passageway to the side exit of said street car and in alighting therefrom so that she could have done so with reasonable safety; (4) that defendant's agents and servants in charge of said car knew, or by the exercise of due care would have known, that plaintiff was in imminent peril of being injured in attempting to alight from said street car, in time thereafter to have avoided injury to plaintiff by clearing the passageway to the side exit thereof or by assisting her in going through said passageway and in alighting from said street car.

The answer of defendant was a general denial.

Defendant assigns as error the action of the court in refusing to give instructions in the nature of demurrers to the evidence offered by defendant at the close of plaintiff's case and at the close of the whole case, and in giving to the jury instruction number 1 at the request of plaintiff. Defendant contends that the evidence did not justify the submission of the issues contained in said instruction.

Defendant did not stand upon its demurrer to the evidence at the close of plaintiff's case but went on and produced evidence. It, therefore, waived error, if any there was, in the court's action in overruling said demurrer. [Emory v. Emory (Mo. Sup.), 53 S. W. (2d) 908; Steffen v. Equitable Life Assur. So. (Mo. App.), 64 S. W. (2d) 302.] The question, therefore, before this court for determination is whether or not the court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence at the close of the whole case.

Plaintiff testified that at the time she was injured she was 32 years old, single and unmarried; that she was doing stenographic and secretarial work for a railroad company; that on the day in question she left her sister's home on Dodier Street in the City of St. Louis, where she was living, at about eight o'clock P. M., to go to a church on Grand Avenue between Cook and Finney Avenues; that she boarded a southbound Grand Avenue street car at Grand Avenue and Dodier Street, which was about ten blocks north of the church to which she was going; that she got on the front end of the street car and it was well filled with passengers; that there was a regular side exit in the middle of the car on the west side thereof as the car was traveling southwardly which was used by passengers alighting therefrom; that there were two doors in the exit; that she paid her fare and took a seat opposite the north door of the exit and remained

there until she was ready to alight from the car at Cook Avenue; that there were two passageways leading to the exit, with a rail between them and a rail on each side, making three rails; that after the car had gone as far south as Easton Avenue, it was packed and jammed with people, every seat was taken and the aisles and passageways were packed and jammed, and that the car remained in that condition up to the time she tried to get off; that when the car left the intersection immediately north of her destination, she rang the bell giving a signal that she wished to get off, and that the car came to a complete stop at the usual stopping place on the north side of the intersection of Grand and Cook Avenues.

Plaintiff further testified that a few blocks south of the point where she was going to alight from the car there were a number of churches and several show houses or theatres, thus accounting for the large crowd that had boarded the street car. She testified that after the car had come to a stop she proceeded to get off and that she had to force and squeeze and wedge her way through the crowd as she made her way to the exit door; that when she got to the exit door there were two men standing back to back between the two railings which formed the passageway to the exit door, one facing the front end of the car and the other facing the rear end of the car; that as she stepped forward to make her way between the two men, her right foot caught on the leg or feet of one of the men and she stumbled forward; that her left leg was free but she lost her balance and went down on her left knee, twisting her back, and fell to the surface of the street; that it was raining at the time and the rain was turning to sleet as it fell and that the street was slick; that the rain had not frozen solid "but it was turning, freezing;" that she fell out from the exit door to the left and slid toward the front of the car; that her left knee was the part of her body that she struck on first. Plaintiff testified that at the time she fell she weighed one hundred and ninety-five pounds and that at the time of the trial she weighed about one hundred and sixty or one hundred and sixty-five pounds. She testified that she was not able to get up after she fell but had to be helped up; that she was helped by a Mr. McInerny who was a passenger on the car at the time; that she was placed in an automobile and taken to her home; that she wasn't able to walk but had to be helped; that her legs were hurt, both knees were bruised; that she was shocked from the fall, became nervous and excited and suffered pain in her lower back, both knees and legs.

Defendant does not contend that plaintiff was not injured and does not complain of the amount of the verdict, hence it is unecessary to set out the evidence of plaintiff's injuries and the treatment she received therefor.

Plaintiff's testimony showed further that the conductor of the

street car was standing near the south door of the exit in the middle of the side of the car and that he did not clear the aisle or attempt to clear the aisle while plaintiff was trying to get off the car, and did not assist her in any way in getting through the passageway to the exit door, but that after she fell upon the street he came out of the car and got her name and address.

On cross-examination, plaintiff testified that at the time she boarded the street car she had no trouble in finding a seat and that the two men who were standing in the passageway leading to the exit door were large men, weighing about two hundred pounds each. She testified that she did not come in contact with anything between the time she stumbled and the time she came in contact with the street; that the only thing she was carrying at the time was her purse; that she fell from the floor of the car directly into the street; that the two men who were standing in the passageway leading to the exit door almost filled the exit opening there and that they were standing so close to the doorway that their shoulders would have touched the door if it had been closed; that as she stepped forward to make her way out between the two men, they tried to make way for her, "just kind of drew back to make room . . . like you would sort of stiffen yourself to make a little room;" that all the time she was on the street car, the conductor was standing in his booth right next to the south exit door and that he did nothing to assist her in getting through the passageway to the door.

In passing upon defendant's demurrer to the evidence in this case, we are required, under the long established and well known rule, to take plaintiff's evidence as true, disregard defendant's evidence where it is in conflict with plaintiff's evidence and give plaintiff the benefit of all reasonable and legitimate inferences arising from all the evidence. [Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. (2d) 548; Maginnis v. Mo. Pac. Ry. Co., 268 Mo. 667, 187 S. W. 1165.]

The evidence of defendant herein was in direct conflict with the evidence of plaintiff as to the manner in which plaintiff sustained her injuries. In view of the above mentioned rule, a brief summary of defendant's evidence will be sufficient for all purposes in determining this case.

Mrs. Ethel Goetz and her son, Frank Goetz, who were passengers on the car, and Max Fisher, the conductor, gave testimony for defendant to the effect that plaintiff did not fall off the street car but alighted safely therefrom; that after she had alighted, the exit doors of the car were closed; that while the car remained standing still someone knocked on the door or window of the car and called out "Open up;" that the conductor opened the exit doors and that plaintiff was then in the street down on one knee at a point between the

street car and the curb of the sidewalk; that it was raining and freezing at the time and that the street was wet and slick. The motorman of the street car testified that he was on the front platform and did not see plaintiff fall and and did not see her at any time before she fell; that he heard somebody make a noise on the door of the street car and call out that there was a lady lying in the street.

Defendant earnestly contends that the evidence fails to show any actionable negligence by its servants and argues that it was not sufficient for plaintiff to show merely that the street car was crowded and that the defendant had knowledge thereof and that plaintiff had to push and squeeze her way through the crowd to the exit doors. Defendant has not cited any case in Missouri where the facts were similar to those in the case at bar, and frankly states that no decision has been found that is squarely in point on the issues involved herein. However, defendant does cite the case of Carlson v. Wells (Mo. Sup.), 276 S. W. 26, and argues that the language used by the court in discussing an instruction therein should be convincing that there is no liability on defendant under the facts in the case at bar. In the Carlson case, supra, plaintiff's testimony was to the effect that while he was standing on the crowded platform of the street car in question, with his back to the north while the car moved westwardly, the car gave a very unusual jolt and plaintiff "fell backward like a log." There was testimony of other witnesses in the case to the effect that the car gave a jerk just before the plaintiff fell off and that plaintiff fell off the car before it stopped. Defendant's evidence in that case was to the effect that there was no unusual jerk or jolt of the car and that the car was standing still when plaintiff was pushed from the car by another passenger forcing his way through the crowd in a violent manner. In aproving an instruction given for defendant therein, the court said:

"If, according to defendant's theory, the car had been stopped and was standing still for the purpose of discharging passengers therefrom, then it seems to us that defendant would not have been negligent in opening the doors of the rear platform for the purpose of egress, and there would therefore be no liability upon defendant's part if plaintiff was then pushed from the car by another passenger, over whom defendant had no control, violently forcing his way through the crowd upon the platform in order to alight from the standing car." [Carlson v. Wells (Mo. Sup.), 276 S. W., l. c. 31.]

In support of the declaration above quoted, the court cited the case of Wren v. Railway Co., 125 Mo. App., l. c. 607, 102 S. W. 1077, wherein there was a charge that the street car started with a sudden jerk while plaintiff was in the act of alighting. The defendant's evidence in the Wren case tended to show that plaintiff fell by reason of having caught her foot in her own dress or by some-

one stepping upon her dress. Defendant asked for an instruction submitting its theory, which the trial court refused to give. In reversing the judgment against the railway company and remanding the cause for the refusal to give such requested instruction, the court said:

"The evidence showed the car to have been crowded and that plaintiff had some difficulty in making her way to and over the platform as the car stopped. Some one called to the passengers who were standing to make room for her as she wished to get off. While there was ample evidence to support her theory that she was thrown by sudden jerk of the car while in the act of getting upon the step, yet there was other direct and affirmative evidence that she fell by reason of having caught her foot in her dress, or by some one stepping upon her dress. Refused Instruction 13, was that if she fell or was thrown down by reason of either of those things, she could not recover." [Wren v. Met. Street Ry. Co., 125 Mo. App., 1. c. 606, 102 S. W. 1077.]

Plaintiff in the Wren case, supra, contended that it was not error to refuse the requested instruction because the matters therein were covered by other general instructions which were given. The court held that the giving of such general instructions to the effect that the plaintiff could not recover if the injury was produced by any other cause than the one pleaded did not cure the error committed in refusing defendant's offered instruction, and declared that a party has a right to direct positive instructions on his theory of defense.

It will be observed that in the two Missouri cases relied upon by defendant herein the facts as well as the charges of negligence were quite different from the facts and the charge of negligence in the case at bar. In both of the cases referred to the negligence alleged was an unusual jerk or jolt of the street car. The overcrowding of the street car was merely incidental to the negligent jerk or jolt alleged. Therefore, it is clear that in those cases the court was not called upon to decide such questions as are presented in the case at bar. In view of these differences in the charges of negligence and proof, we do not feel warranted in holding that those cases constitute authority for a decision in this case that plaintiff's evidence was not sufficient to warrant the trial court in submitting the case to the jury.

Defendant also relies upon a number of cases decided by the Massachusetts courts, typical of which is Moulton v. Boston Elevated Ry. Co., 236 Mass. 234, where the court said:

"The pushing and crowding of passengers in their haste to get on and off a street car is one of the incidents of such travel and for this, standing by itself, the defendant was not responsible." [Moulton v. Boston Elev. Ry. Co., supra, 1. c. 238.]

In Ritchie v. Boston Elevated Ry. Co., 238 Mass. 473, plaintiff was alighting from a street car of defendant at a subway station. The force of passengers coming behind her pushed her with such force that she lost her grip on the hand rail and fell to the pavement. The conductor was at the rear of the car in his usual place and kept saying: "Step lively, step lively." The court held that that was not evidence that the defendant was negligent and that it was not negligence for the conductor to fail to prevent passengers from crowding as they were leaving the car where it was not shown that there was reason to expect anything unusually dangerous at the time and where it was not shown that the passengers were unruly or acting in such manner as to call for interference by the railway company's agents.

Burns v. Boston Elevated Ry. Co., 244 Mass. 451, and Rogers v. Boston Elevated Ry. Co., 246 Mass. 478, are also cited and relied upon by defendant herein. It is sufficient to say that they apply the same doctrine applied in the other Massachusetts cases heretofore referred to.

In Lehberger v. Public Service Ry. Co., 79 N. J. L. 134, another case relied upon by defendant herein, the petition of plaintiff alleged that he was a passenger on defendant's street car which defendant permitted to become greatly overcrowded, so that plaintiff, desiring to alight, had to push his way through the crowd and while on the platform preparing to alight before the car stopped, he was violently jostled and pushed off by the crowd and injured. It was held the declaration failed to state a cause of action.

There are two lines of authority upon the question of whether or not a common carrier of passengers for hire is liable to a passenger injured as a direct result of the overcrowded condition of its street car. The cases relied upon by defendant, which we have referred to, are typical of what is called the Massachusetts theory. The greater weight of authority appears not to favor the Massachusetts theory. In 5 A. L. R. 1257, 1258, the annotator says:

"The Massachusetts theory . . . seems to be that the fact that a street car is crowded is immaterial upon the question of liability of the company to a passenger injured on account of the crowded condition of the car, and that the true test is whether or not there was reason to expect that anything unusually dangerous would happen; in other words, whether the conditions could have been foreseen and provided for, practically leaving out of consideration the fact that the car was overcrowded. . . .

"But in the great majority of the cases the courts have regarded the overcrowding of street cars as a controlling, or at least, as a material, element in determining the liability of a street railway

company for injuries to passengers caused by or resulting from such overcrowding.''

In 10 C. J., pp. 966, 967, section 1382, the duty of a carrier is stated as follows:

''It is the carrier's duty to exercise a high degree of care to provide its passengers with seats and with a safe place to ride, so as to prevent overcrowding, particularly where it has notice in advance that an unusual number of passengers will ride on its trains; and, while it is not negligence *per se* to receive a passenger on a crowded car or train, and the carrier is not liable for a passenger's injuries if it exercises a proper degree of care for his safety in such cases, yet it is its duty to exercise a degree of care for the passnger's safety proportionate to the increased danger caused by the overcrowding; and if it fails so to do it is liable for injuries received by the passenger by reason of the overcrowding of the conveyance increasing the danger to him by his being compelled to stand or ride in an unsafe position, or by being put in peril while getting on or off the conveyance.''

It is further stated in 10 C. J., p. 1075, section 1465:

''Whether or not the train or the car which caused the injury was, at the time, operated with the proper degree of care and skill is generally a question for the jury, unless the insufficiency, or the clear and undisputed character, of the evidence makes it a question for the court. Thus, it is generally a question for the jury as to whether the carrier was negligent as to the overloaded or overcrowded condition of the car.''

In Lobner v. Met. Street Ry. Co., 79 Kans. 81, 101 Pac. 463, it was held that while it cannot be declared negligence as a matter of law for a street railway company to allow its cars to be crowded with passengers, yet if the company permits its cars to become so crowded that a passenger is pushed off and injured, the question of whether overcrowding of cars is negligence is one of fact for the jury. It was further held in that case that one who rides on a crowded street car assumes the inconvenience resulting from the crowded condition, but the company is not for that reason relieved from the responsibility of using due care for the safety of passengers invited upon such crowded car. In the Lobner case the grounds of negligence, as stated in the opinion, were substantially that the street car on which plaintiff rode was overcrowded; that the company did not provide a sufficient number of cars to carry the passengers safely, and that it ''permitted the car and its platforms to become so crowded as to make the plaintiff's position on the car perilous and that by reason of its crowded condition and while standing on the platform he was crowded off by his fellow passengers. . . .'' In that case the court said:

"The company controls the operation of its cars and the number of passengers permitted to ride on each of them. It was the duty of the company to provide a sufficient number of cars to accommodate and properly care for passengers; *and to permit its cars to become overcrowded so that a passenger is exposed to a danger which reasonable foresight might have anticipated and avoided is negligence.* [Topeka City Ry. Co. v. Higgs, 38 Kan. 375, 16 Pac. 667, 5 Am. St. Rep. 754.] In Pray v. Omaha Street R. Co., 44 Neb. 167, 62 N. W. 447, 48 Am. St. Rep. 717, it was held that: 'It is evidence of negligence on the part of the street railway company to carry passengers greatly in excess of the seating capacity of its trains, and permitting them to stand on the platforms and steps of the cars.' (Citing cases.)

"The overcrowding of the car in this case is not held to be culpable negligence as a matter of law, but only that there is testimony tending to show negligence which is deemed sufficient to take the case to the jury. . . ." [Lobner v. Met. Street Ry. Co., supra, 1. c. 464.] (Emphasis ours.)

In Hunsen v. North Jersey Street Ry. Co., 64 N. J. L. 686, 46 Atl. 718, defendant was charged with negligence in having more passengers on its car than could safely and prudently be carried and overcrowding the car and platform. There was a judgment for plaintiff in the trial court but defendant was granted a new trial and plaintiff brought error. The Court of Errors and Appeals of New Jersey reversed the judgment which granted the new trial. The court said:

"A common carrier is bound to take a high degree of care of its passengers. This general duty includes a specific responsibility as to the entrance and exits provided for its vehicles . . . That exit from a crowded car is likely to be attended in the case of any passenger with some difficulty and . . . with some risk of injury is a matter of daily observation and familiar experience. Reasonable foresight should anticipate the possibility of such danger and due caution should provide against it. The defendant therefore was bound specifically to use a high degree of care to protect the plaintiff,—not, indeed, from crowding *per se,* but from danger likely to arise from crowding. . . . The court would not have been justified in nonsuiting the plaintiff, and holding as a matter of law that the exercise of reasonable foresight would not lead the defendant to anticipate that overcrowding the car and its platform might render accidents, like the one which befell plaintiff, probable." [Hansen v. North Jersey St. Ry. Co., supra, 64 N. J. L. 686, 46 Atl., 1. c. 721, 722.]

In Walsh v. Chicago Railways Co., 294 Ill. 586, 128 N. E. 647, it was held that a street railway company must do all that human

care, vigilance and foresight can reasonably do in view of the conveyance adopted and consistent with its practical operation to carry passengers safely, and that the same rule applies to passengers while entering and alighting from the cars. In that case plaintiff got on defendant's car when it was partially filled. The car thereafter became crowded with passengers. When plaintiff arose from her seat at her destination, she was jostled by passengers moving toward the exit until she was pushed off the car and injured. In that case the court declared that carriers are bound to know the habits of passengers on street cars and to conduct their business with such facts in mind; that if they accept too many passengers or run cars so infrequently as to cause too many passengers to seek to ride on each car, they must be held responsible for any result which reasonably ought to have been anticipated. In that connection the court said:

"If a carrier fails in his duty to a passenger he is responsible for the consequences of his negligence, although the negligence or misconduct of a third person contributes to the injury. When an injury was occasioned by the joint negligence of several, the person injured, if not himself in fault, may have his action against all or either of the persons causing the injury. [4 R. C. L. 1143.] To constitute proximate cause the negligent act or omission need not be the sole cause, nor the last or nearest cause, but it is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, produces the injury, or if it sets in motion a chain of circumstances and operates on them in a continuous sequence, unbroken by a new or independent cause. [Seith v. Commowealth Electric Co., 241 Ill. 252, 89 N. E. 425, 24 L. R. A. (N. S.) 978, 132 Am. St. Rep. 204.] The action of the passengers, according to the testimony of defendant in error, took place concurrently with the carrier's conduct in overcrowding the car, and under the authorities cannot reasonably be said to alter or lessen plaintiff in error's liability." [Walsh v. Chicago Rys. Co., 294 Ill. 586, 128 N. E., l. c. 650.]

In South Covington & C. St. Ry. Co. v. Harris, 152 Ky. 750, 154 S. W. 35, plaintiff was a passenger on the rear platform of defendant's street railway car. The car was crowded to its capacity on the inside and on the platform. While the car was standing still, plaintiff was pushed off the platform by the crowd. Holding that the plaintiff was entitled to recover for the negligence of defendant in overcrowding the car, the court said:

"When a carrier creates conditions that imperil the safety of passengers, it must at the same time take such precautions as in the exercise of the highest practicable degree of care consistent with the proper conduct of its business are necessary to save them from danger." [South Covington & C. St. Ry. Co. v. Harris, 152 Ky. 750, 154 S. W., l. c. 36.]

In Barney v. Hudson & M. R. Co. (N. J. Sup.), 145 Atl. 5, 6, the court said:

"The crowding of a railroad car, and especially of those parts of it that are used for entrance and exit, is attended with a liability to danger that the carrier should anticipate and employ care to avert. . . ."

In Knaisch v. Joline et al., 138 App. Div. 854, 123 N. Y. S. 412, it was held that evidence, that a street car company allowed its car to become so filled that the aisles and platforms were packed, justified the jury in finding that it was negligent and that the negligence of the company in permitting its car to be overcrowded was the proximate cause of injury to a passenger who was pushed off the car by another passenger who was pushing his way through the crowd to get into a position to alight. The court said:

"There can be no doubt that the jury may find negligence from such overcrowding of cars as exposes the passengers to danger." [Knaisch v. Joline, supra.]

In Reem v. St. Paul City Ry. Co., 77 Minn. 503, 80 N. W. 638, plaintiff was a passenger upon the front platform of a street car which, although not crowded when he first boarded it, later became crowded to its utmost capacity. Plaintiff was pushed by the force of the crowd against a chain which gave way and he was thrown to the street and injured. In holding that the defendant was negligent in overcrowding the car, the court said:

"The exposure of a passenger to a danger which the exercise of a reasonable foresight would have anticipated and due care would have avoided is negligence on the part of a carrier." [Reem v. St. Paul City Ry. Co., 77 Minn. 503, 80 N. W., l. c. 638.]

For other cases involving the question of the liability of common carriers of passengers for overcrowding their cars see Walker v. Connecticut Co., 91 Conn. 606, 100 Alt. 1063; Chicago & Western Indiana R. Co. v. Newell, 113 Ill. App. 263; Kordick v. Chicago Rys. Co., 167 Ill. App. 74, 80; Alton Light & Traction Co. v. Oliver, 119 Ill. App. 181, 188, affirmed in 217 Ill. 15, 75 N. E. 419.

It will be seen from the foregoing cases that the weight of authority does not support the contention of defendant in the case at bar but is strongly to the contrary. We are unwilling to adopt the Massachusetts theory urged by defendant and apply it to the facts in this case. We believe that the cases from other states which we have reviewed contain the sounder reasoning and that the doctrine therein should be applied to the case at bar. Certainly it cannot properly be said that reasonable minds would all agree that the defendant in the case at bar exercised the highest degree of care for the safety of its passengers when it permitted its car to become so overcrowded that the seats were all taken and the aisles and passage-

ways to the exit doors were packed and jammed with passengers, thus making it necessary for plaintiff to squeeze, wedge and force her way between other passengers, and gave her no aid to enable her to alight in safety. By exercising the highest degree of care, as it was its duty to do, defendant could have anticipated that such overcrowding of its car, particularly the passageways leading to the exit doors, would create a condition inimical to the safety of its passengers and could and would have taken such precautions as would have made it reasonably safe for plaintiff to alight from its car. Defendant was in full control of its car and it created the overcrowded condition thereof by taking on more passengers than it could find space for consistent with reasonable safety because defendant must be held to have known that some of the passengers would wish to alight while the car remained in such overcrowded condition. Having itself created the overcrowded condition which was likely to make the passageway to the exit door unsafe for those who wished to alight, it was defendant's duty, through its servants in charge of the car, to take such steps as were reasonably necessary to aid plaintiff in alighting safely. Plaintiff's evidence shows that defendant's conductor did nothing whatever to aid her in this respect. It is, of course, trite to say that defendant was not an insurer of the safety of the passengers on its car and we are not holding as a matter of law that defendant was negligent, but we are of the opinion that the evidence fully warranted the court in submitting the case to the jury.

With respect to instruction number 1 given on behalf of plaintiff, defendant does not contend that the instruction is erroneous in any particular respect but does contend that the evidence hypothesized therein was insufficient to warrant the court in submitting the case to the jury and hence in giving the instruction. Having ruled that the evidence was sufficient to warrant the trial court's action in this respect, it follows that we must also hold that the instruction was properly given.

Finding no error, the judgment should be and is affirmed. *Hostetter, P. J.,* and *Becker, J.,* concur.