SIXTH DIVISION
September 1, 2006

No. 1-03-0106

| | | |
|---|---|---|
| MICHAEL LANGE and LINDY LANGE, | ) | Appeal from the |
| Individually, and as Special | ) | Circuit Court of |
| Administrators of the Estate of | ) | Cook County |
| Baby Lange, | ) | |
| | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | No. 99 L 6143 |
| v. | ) | |
| | ) | |
| | ) | |
| MARY FREUND, | ) | |
| | ) | Honorable |
| | ) | Carol Pearce McCarthy |
| Defendant-Appellee. | ) | Judge Presiding |

JUSTICE McNULTY delivered the opinion of the court:

Michael Lange and Lindy Lange sued Mary Freund for the
wrongful death of their unborn child, alleging that Freund's
negligent driving caused a collision between her car and the
Langes' vehicle, resulting in the loss of Lindy's five-week-old
pregnancy.  Freund admitted negligence, but denied that the
collision was the cause of the unborn child's death.  A jury
returned a general verdict in favor of Freund and, via a special
interrogatory, confirmed its finding that the loss of the Langes'
child was not caused by the accident.  The Langes appeal,
alleging that numerous errors require a new trial.  For the
reasons that follow, we affirm.  In accordance with Supreme Court
Rule 23, portions of this opinion are nonpublishable; the
complete text of our disposition is provided in the nonpublished

order issued simultaneously with this opinion.

BACKGROUND

Michael and Lindy Lange were driving to visit Lindy's brother and sister-in-law in Davenport, Iowa on the evening of September 5, 1997 when the vehicle of Mary Freund, approaching from the opposite direction, made a left turn into their lane. The vehicles collided, resulting in the total loss of the Langes' car. While the record presented to this court reveals some initial dispute about whether Mary or her husband, John Freund, was driving their vehicle at the time of the accident, John passed away shortly thereafter for reasons unrelated to the collision and the parties have not pursued the dispute in this proceeding. The Langes were taken by ambulance to a local emergency room, where Lindy was briefly examined, but neither she nor Michael was admitted to the hospital, and the record does not suggest that either of the Freunds suffered injury.

On the date of the accident, Lindy was five weeks into a pregnancy which had been achieved through *in vitro* fertilization. The Langes returned to the Chicago area on the Sunday following the accident and visited the offices of Lindy's treating physician at the first available opportunity on the morning of Monday, September 8. A test of Lindy's blood revealed that human chorionic gonadotropin (HCG), a hormone which increases in rapid and predictable levels in the bloodstream of an expectant mother during a healthy pregnancy, was present in Lindy's system in an

2

amount which was lower than normal for a pregnancy at her stage. Lindy was tested every few days thereafter, and each test showed HCG levels that indicated her pregnancy was not proceeding normally. On September 29, an ultrasound showed that the Lange baby's heart was no longer beating. The child showed no signs of recovery thereafter, and on October 16, it was surgically removed from Lindy's uterus.

The Langes filed an action in the circuit court of Cook County in which Mary Freund admitted that her negligent driving caused the collision. Issues regarding damages other than the loss of Lindy's pregnancy were resolved prior to trial, leaving the parties to present to the jury evidence on the presence or absence of a causal link between the collision and the miscarriage, and evidence of the damages recoverable as a result of the death of an unborn child. In addition to the testimony of Lindy and Michael, the Langes presented the expert testimony of three physicians, each of whom concluded that Lindy's miscarriage was caused by the accident. The Lange experts testified that the forces acting upon Lindy's body when their vehicle slammed to a sudden stop from a speed of more than 30 miles per hour were sufficient to cause her internal organs to be shaken violently, rupturing the blood vessels between the uterus and the placenta. One of their experts also testified that the accident could have caused the miscarriage by producing a surge of hormones which

constricted Lindy's blood vessels, cutting blood flow to the placenta. Freund presented one medical expert, who concluded that the pregnancy had begun to show signs of difficulty before the accident. Her expert testified that in healthy pregnancies, HCG levels double each 48 hours, and that pregnancies which failed to show this steady increase were almost certain to end in miscarriage. He further testified that the HCG levels revealed by Lindy's September 8 test were abnormally low not only for that date but for the date of the accident, September 5. Since he had never known HCG levels to rise normally, fall, then rise again, he concluded that the postaccident HCG levels were no lower than those on the date of the accident, and that they were lower than normal before that date. Freund's expert testified that the size of the fetus's sac was smaller than expected at the time of Lindy's last preaccident examination and that she displayed none of the bleeding or other signs of injury which would have been consistent with traumatically-induced miscarriage; he concluded that the accident was not the cause of the miscarriage. The jury, in addition to returning a general verdict in favor of Freund, also responded "No" to a special interrogatory: "Do you find that the automobile accident of September 5, 1997 proximately caused the fetal demise on September 29, 1997." The Langes now appeal, asserting numerous claims of trial error.

## ANALYSIS

4

### I. Court Instruction On Number Of Witnesses

Immediately after closing argument, the trial court, on its own motion, remarked: "I am going to interject one thing right now. The number of witnesses on either side of the case is not dispositive of the issues or the facts as you find them." The Langes contend that the giving of this instruction was sufficiently prejudicial to constitute reversible error.

In support of their contention, the Langes note that our supreme court's committee on jury instructions in civil cases has advised against such instructions: "The committee recommends that no 'one witness against a number' instruction be given." Illinois Pattern Jury Instructions, Civil, No. 4.06 (2000) [(hereinafter IPI Civil (2000)]. The committee, in its notes to the recommendation against giving such instructions, commented, "The Illinois Supreme Court has held that it is for the jury to determine to what extent each witness is credible, and that it is error to give an instruction on that subject so worded that under the circumstances of the case the jury might readily infer the court believed the witnesses for one side to be more credible than the witnesses for the other side. Walsh v. Chicago Rys. Co., 294 Ill. 586, 595 (1920)." IPI Civil (2000) No. 4.06, Comment. Though we are mindful of the foregoing, we do not agree with the Langes' assertion that the committee's recommendation and comments establish that the trial court's admonition in the instant case was reversible error.

5

1-03-0106

Pattern instructions are presumed to be accurate statements of Illinois law, and the jury is to be instructed using an approved pattern form if the trial court determines that it is applicable to the circumstances of the case. Luye v. Schopper, 348 Ill. App. 3d 767, 773 (2004). But pattern instructions are not themselves law. Our supreme court has held that they "are not exempt from challenge." Powers v. Illinois Central Gulf R.R. Co., 91 Ill. 2d 375, 385 (1982). "There has not been any advance approval of the IPI by this court. An instruction is approved or rejected only after it has been judicially questioned and considered." Powers, 91 Ill. 2d at 385. We have been made aware of no Illinois precedent which may be construed as a blanket prohibition of all instructions similar to that in the instant case, or as a judicial analysis of the committee's recommendation against such instructions. It is thus apparent that the propriety of the trial court's instruction herein is not conclusively determined by the recommendation and comments of the supreme court's jury instruction committee.

Instructions to the jury, taken as a whole, must fairly, fully, and comprehensively apprise the jury of the relevant legal principles; a trial court will not be reversed for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant. Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 273-74 (2002). In the instant case, the trial court's instruction to the jury that

6

the number of witnesses on either side of the case is not dispositive was not an inaccurate or misleading statement of Illinois law. "Evidence, and its preponderance, is to be determined from its value and weight, not from the mere number of witnesses and exhibits on one side or the other." Thornton v. Rhodus Mobile Homes, Inc., 104 Ill. App. 3d 869, 872 (1982). See also Hardware State Bank v. Cotner, 55 Ill. 2d 240, 252 (1973). Indeed, the supreme court committee on jury instructions long approved a pattern instruction which advised that "[i]n deciding whether any fact has been proved, it is proper to consider the number of witnesses testifying on one side or the other as to that fact, but the number of witnesses alone is not conclusive if the testimony of the lesser number is more convincing." IPI Civil No. 2.07 (3d 1990); Johnson v. Equipment Specialists, Inc., 58 Ill. App. 3d 133, 143 (1978).

In changing its stance on such instructions, the supreme court committee, notably, characterized its amended viewpoint as a recommendation, and did not suggest that Illinois law had changed. Instead, as outlined above, it emphasized the possible prejudicial effect of a court's suggestion that the witnesses of one party were more credible than those of the opponent, citing Walsh v. Chicago Rys. Co., 294 Ill. 586, 595 (1920), and recommended against the injection of such prejudice into civil trials.

Walsh, however, did not suggest that all "one witness

7

against a number" instructions were inherently prejudicial, or that all such instructions constituted reversible error.  In Walsh, the jury was instructed: "'The court instructs the jury that the testimony of one credible witness may be entitled to more weight than the testimony of many others, if, as to those other witnesses, you have reason to believe, from the evidence and all the facts before you, that such other witnesses have knowingly testified untruthfully as to any material fact or circumstance and are not corroborated by other credible witnesses or by circumstances proved in the case.'"  Walsh, 294 Ill. At 595.  The Walsh court found the instruction to be sufficiently prejudicial to require reversal of a jury verdict against the defendant, who had produced more witnesses to an accident than the plaintiff, but in so doing, the court focused on the instruction's explicit commentary on the credibility of the witnesses: "We find nothing in the testimony that would serve as a basis for an intimation to the jury that any of the witnesses for the [defendant] had knowingly or willfully testified falsely."  Walsh, 294 Ill. at 596.

At the same time, however, the Walsh court acknowledged the possibility that some such instructions would not be similarly suggestive, and would thus be permissible: "An instruction of the character of the one here in question can only be offered when so worded that it does not single out witnesses from one side or the other, so that it might apply to any witness in the case, without

8

reference to whether he was called by plaintiff or defendant." Walsh, 294 Ill. at 596. Walsh thus disfavors instructions which call into question the credibility of one party's witnesses, but does not suggest that an instruction regarding the inconclusive nature of the number of witnesses is in all cases sufficiently prejudicial to constitute reversible error.

Accordingly, since the committee's position on "one against a number" instructions has not yet been adopted by courts of this state, since its position is a recommendation, rather than a purported statement of Illinois law, since the supreme court authority cited as the basis for the committee's recommendation does not prohibit all "one against a number" instructions, and since the court's instruction does not include the commentary on credibility found by the Walsh court to be objectionable, we conclude that the committee recommendation, in itself, is insufficient to establish that the trial court's statement to the jury was reversible error.

We therefore analyze the instruction in accordance with general principles of review of nonpattern instructions in Illinois. The trial court's instruction in the instant case did not misstate Illinois law, and remained within the constraints established by our supreme court for non-pattern instructions: it was "simple, brief, impartial, and free from argument." 177 Ill. 2d R.239(a). It made none of the credibility commentary addressed by the Walsh court, did not make reference to either

9

party, and did not suggest that the number of witnesses was not to be considered.

We believe that the court's instruction was an appropriate communication to the jury in light of the arguments made by the Langes' counsel in closing and rebuttal. Those arguments repeatedly suggested that the number of expert witnesses presented by the parties should determine the outcome of the fact-finding process:

"Getting back to the probabilities. Three people against one. Three experts saying it was the collision against Dr. Zinaman. You take three people, 75 percent, against one expert, 25 percent, who should win? We should win. And that is what more probably true than not true means. You can consider how many people testified on one side as opposed to the other. You can consider that in determining who should win.

* * *

All you have to determine is more probably true than not true, slightly - - have we slightly proved it's more probably true than not true that this collision caused the loss of this pregnancy and what the damages are. And I think it should be very easy. And the reason I think it should be very easy is because now that you know the burden of proof, now that you know it is not a possibility, now that you know our

10

burden is not way up here and that it is just a little bit ahead, putting three against one in context, how do we lose? And that is my point. We shouldn't lose.

* * *

You are also going to be asked to complete what is known as another question in addition to the verdict forms. And that question is going to ask you whether or not you found that the collision of September 5th of 1997 was the proximate cause of the fetus's demise. You need to answer that question yes. That is an additional question you have to answer. Why should you answer that question yes? Because if you apply that burden of proof, more probably true than not true, three people against one, we should win.

* * *

And when [defense counsel] talked about the burden of proof, he just totally glossed over the three people on one side testifying against one person on this side. That is more probably true than not true. Three people saying it was the collision to one person saying it was not the collision, three against one, 75 percent to 25 percent. More probably true than not true. We just have to be a little bit ahead of them in terms of proof, and we should win this case.

* * *

That is why the three against one becomes so important because in order to find in favor of the Defense, you would have to find that Dr. Zinaman standing alone, his testimony would outweigh the other three people.  It is kind of like that basketball game that we were describing.  The Bulls have 100 and the opposing team has 99, the Bulls win. We have three, the opposing team has one.  Who should win?  We should.

* * *

Three against one. More probably true than not true.  We've proven it."

In light of the repeated suggestion that the number of witnesses testifying in favor of the Langes should decide the case in their favor, we cannot find that the trial court misled the jury or prejudiced the Langes with its simple, accurate and argument-free statement that the number of witnesses was not to be considered conclusive.  We accordingly reject the Langes claim that the court's statement constituted reversible error.

II. Jury Selection - Dismissal Of Incomplete Panel

Before jury selection began, the trial court informed the parties that if a panel of four jurors had not been completed and sworn at 4:30 p.m., all jurors on that panel would be dismissed, and the panel would be completely refilled at the beginning of the next court day.  Neither party objected to this rule.

When jury selection began, the court followed its rule as it

had been announced: only three jurors out of the second panel of four had been selected by the close of the day, and those three jurors were dismissed. Counsel for the Langes asked, "You're dismissing all these people, judge?" The trial court responded, "I told you at the end of the day that is what it is. If I don't have a panel, it is only the people who are sworn. So we start over and you each have one challenge." Neither party objected at that time, and neither party objected when jury selection resumed and the remainder of the jury was impaneled.

The Langes now claim that the dismissal of three jurors from the incomplete second panel was reversible error. They contend that they were unable to select a fair and impartial jury because the three peremptory challenges they exercised to remove jurors from the second panel were not reinstated when selection of that panel resumed.

Since the Langes did not object to the court's announcement of its rule, to its application of the rule at the time the three jurors from the incomplete second panel were dismissed, or to its assessment of the parties' remaining number of peremptory challenges, they have waived the issue. Branum v. Slezak Construction Co., Inc., 289 Ill. App. 3d 948, 959-60 (1997). Recognizing this fact, the Langes argue that we should consider the issue under the plain error doctrine, which allows us to review claims of error not properly preserved at trial. But this doctrine is applied in civil cases only where the act complained

13

of was a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process itself. Gillespie v. Chrysler Motors Corp., 135 Ill. 2d 363, 377 (1990).

In the instant case, however, the Langes have failed to make even the threshold-level showing that the actions they complain of were prejudicial. They contend that because the jurors they selected for the second panel were dismissed, the three peremptory challenges they used to select that panel were improperly deprived of their impact. Illinois reviewing courts have not shared this view. "The right of peremptory challenge is a right to exclude jurors, not to select them. It enables a party to say who shall not try his case, but it does not enable him to select the particular jurors by whom he wishes his case tried." Schultz v. Gilbert, 300 Ill. App. 417, 422 (1939). Prejudice in the jury selection process is not shown by the mere assertion that a party would have preferred different members of the jury; Illinois courts have instead required a showing that a party was forced to accept a juror that was objectionable and was unable to excuse that juror due to the lack of peremptory challenges. O'Donnell v. Holy Family Hospital, 289 Ill. App. 3d 634, 649 (1997); Snyder v. Poplett, 98 Ill. App. 3d 359, 365 (1981). The Langes ended jury selection in the case at bar with one unused peremptory challenge, have not offered any suggestion that any of the jurors on the second or third panels were objectionable in any way, and

14

have not demonstrated that the method of selecting their jury resulted in any outcome recognized by Illinois law to be prejudicial. We therefore conclude that even if the Langes are spared the impact of their failure to preserve this issue for review, they have presented no basis for reversal of the verdict in favor of Freund.

### III. Jury Selection - Striking of "Accepted" Juror

The material in this section and sections IV through VII is nonpublishable pursuant to Supreme Court Rule 23.

The Langes also argue that the trial court erroneously permitted Freund to cross-examine their expert witnesses with questions about their level of certainty about the cause of the miscarriage: they claim that the trial court erred in allowing Freund to ask their experts if circumstances other than the accident were possible causes of the loss of the child and in allowing her to ask them if they were certain that problems with fetal development had not started before the accident.

"It is permissible for a medical expert to testify concerning his or her opinions in terms of possibilities or probabilities." Matuszak v. Cerniak, 346 Ill. App. 3d 766, 772 (2004). In Wojcik v. City of Chicago, 299 Ill. App. 3d 964, 979 (1998), we rejected the contention that a trial court errs by permitting cross-examination of an expert about possible alternative causes of injury. We find no basis for departure from the Wojcik court's approach, and accordingly reject the

15

Langes' identical contention in the case at bar.

We also reject the Langes' contention that the trial court erred in allowing Freund to ask their experts on cross-examination whether they were "certain" that the pregnancy was progressing normally in the days immediately prior to the accident. Questioning of the certainty of the direct testimony of a witness is, in our view, well within the boundaries of potentially permissible cross-examination, subject to the trial court's discretion; such questioning has been routinely accepted by this court in the examination of expert and lay witnesses. See Downing v. United Auto Racing Ass'n, 211 Ill. App. 3d 877, 888 (1991); Collum v. Fred Tuch Buick, 6 Ill. App. 3d 317, 320 (1972). Accordingly, although a "reasonable degree of medical certainty" is the minimum threshold of assuredness required of a competent medical expert opinion (Hunter v. Chicago & North Western Transportation Co., 200 Ill. App. 3d 458, 473 (1990)), we are aware of no viable precedent which prohibits either the expression of a greater degree of conviction or cross-examination questions about whether that greater degree of conviction is present.

The Langes cite Skalon v. Manning, Maxwell & Moore, Inc., 127 Ill. App. 2d 145, 159 (1970) for the proposition that "it is error to allow an expert to give an opinion as an absolute certainty on the cause of one's injury." While that principle was indeed cited by the Skalon court as the holding of Turnbow v.

1-03-0106

<u>Hayes Freight Lines, Inc.</u>, 15 Ill. App. 2d 57, 61-62 (1957), we believe that it cannot be viewed as an accurate statement of current Illinois law.

The <u>Turnbow</u> court relied upon a premise long prevalent in Illinois jurisprudence: that conclusive expert testimony on an ultimate issue in a contested action was prohibited because such testimony would invade the jury's province as the finder of fact. Illinois courts expressed concern that "direct and positive testimony" by an expert on an ultimate issue would conclusively decide the question, thereby leaving the jury with "nothing left to do but to proceed to award large damages." <u>Fellows-Kimbrough v. Chicago City Ry. Co.</u>, 272 Ill. 71, 78 (1916). Mindful of that premise, our courts insisted that expert testimony on a case's ultimate factual issue be expressed equivocally, and not with certainty. <u>Santiemmo v. Days Transfer, Inc.</u>, 9 Ill. App. 2d 487, 497 (1956).

Our supreme court has since disavowed this principle, however, explaining that a jury's province as factfinder is not impermissibly invaded even by expert testimony expressed in absolute terms, since jurors remain free to disbelieve and disregard such testimony. <u>Zavala v. Powermatic, Inc.</u>, 167 Ill. 2d 542, 545 (1995).

In <u>Richardson v. Chapman</u>, 175 Ill. 2d 98, 107-108 (1997), the court, reviewing a traditional requirement of neutral, inconclusive actuarial expert testimony, found that such

17

requirements, because they were mere products of the disfavored prohibition against ultimate issue testimony, were no longer viable.  The Richardson court's analysis is dispositive of the Langes' argument in the instant case.  Although medical experts must at least meet the "reasonable degree of medical certainty" threshold to provide a competent, admissible opinion, Illinois law no longer bars the expression of that opinion in more conclusive terms.  The trial court was therefore vested with the discretion to allow cross-examination about the degree of certainty of the Langes' medical experts.  Finding no suggestion of abuse of that discretion, we reject the Langes' contention that permission of cross-examination on the subject was reversible error.

### IX. Prejudicial Trial Court Actions

The Langes allege that various trial court actions created sufficient prejudice against them in the minds of the jury that the verdict against them must be reversed.  We find none of the cited actions, singularly or in the aggregate, to be justification for such relief.

The first action raised by the Langes is the trial court's method of modifying one of the damages instructions they offered for presentation to the jury. After the instruction was read to the jury, the court explained that language found to be inapplicable to the case and redacted from one paragraph of the instruction had not been similarly removed from another

18

paragraph.  Before giving the written instructions to the jury, the court blacked out the inapplicable language with a pen.  The Langes first argue that this editing was prohibited by the Code of Civil Procedure (735 ILCS 5/2-1107 (West 2002)), which, according to their brief, states that a trial court "shall in no case, after instructions are given, clarify, modify or in any manner explain them to the jury . . . unless the parties agree otherwise."  The Langes apparently recognize that the four words omitted from their brief's statutory citation are fatal to this argument: the statute indeed prohibits clarification, modification or explanation of instructions "otherwise than in writing" unless the parties agree.  Since the modification complained of here is clearly in writing, the Langes' statutory argument on this issue merits no further discussion.

The Langes' next objection to the court's written modification of the instruction is that since it was identified as a plaintiffs' instruction, the handwritten alteration "showed contempt" for them and their attorneys.  In People v. Foster, 288 Ill. 371 (1919), instructions were edited by drawing lines through the inapplicable language, but the edited words remained clearly legible. Our supreme court did not find such editing to be prejudicial.  "[S]o far as we are advised a case has never been reversed solely because the instruction had been handed to the jury as modified by inserting or striking out and without being re-written."  Foster, 288 Ill. at 383.  "[A]ny modification

1-03-0106

of this kind not necessarily misleading ought not to reverse the case."  288 Ill. at 383.  The Langes have cited no precedent for departure from the Foster court's approach, and our research has revealed none.  Furthermore, the Langes do not contend that the instruction, as modified, was an incorrect or misleading statement of Illinois law.  We therefore adhere to the Foster court's analysis and conclude that hand-editing of the instructions submitted to the jury was not reversible error.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

TULLY and O'MALLEY, JJ., concur.

20